RICHARD LEE HOLIDAY v. LAWRENCE M. CUTCHIN, M.D.

No. 430PA83

(Filed 5 June 1984)

**Witnesses § 5.2— character evidence offered by defendant physician improperly allowed**

Character evidence offered by defendant physician was inadmissible for the reason that it was not limited to the doctor's reputation where a witness testified to his opinion of defendant based on his personal knowledge rather than what he knew, if anything, about defendant's reputation.

ON discretionary review of a decision of the Court of Appeals, 63 N.C. App. 369, 305 S.E. 2d 45 (1983), which, on plaintiff's appeal from a jury verdict for defendant and judgment entered

thereon by *Judge Winberry*, presiding at the 24 August 1981 Civil Session of PITT County Superior Court, ordered a new trial.

*McLeod & Senter, P.A., by Joe McLeod and William L. Senter for plaintiff appellee.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, by James D. Blount, Jr., Susan M. Parker and Nigle B. Barrow, Jr. for defendant appellant.*

EXUM, Justice.

This is a medical malpractice claim. The sole issue raised is the admissibility of character evidence offered by defendant physician to bolster his credibility as a witness. The Court of Appeals, in an opinion by Judge Becton, concurred in by Judges Arnold and Hill, concluded that admission of this evidence was error entitling plaintiff to a new trial. We allowed defendant's petition for further review. We now affirm.

I.

On 1 April 1979 Richard Lee Holiday, plaintiff, entered the Edgecombe General Hospital emergency room complaining of pain in his left foot and leg. Dr. Lawrence Cutchin, defendant, was on call in the emergency room and took Holiday's medical history. Holiday indicated that his pain began either while or after he had played basketball two days earlier. Dr. Cutchin examined Holiday by manipulating his left leg and foot. Both appeared normal in color and temperature. An x-ray revealed no injury to a bone. Dr. Cutchin did not, by his own admission, check for a pulse in the patient's foot or leg. Dr. Cutchin diagnosed Holiday's condition as a muscle strain. He gave Holiday some medication for pain and instructed him to apply heat to his leg. Holiday then left the emergency room.

Two days later, Holiday returned to the emergency room. Dr. James Kelsh examined him and found his leg cold and the skin pale. When Dr. Kelsh could find no peripheral pulse he concluded Holiday had developed a blood clot. After Holiday was transferred to Pitt County Memorial Hospital, doctors unsuccessfully attempted to remove the clot. Subsequently, Holiday's left leg was amputated below the knee. Eventually additional clots developed and his leg was amputated above the knee.

Holiday filed this medical malpractice action, alleging negligence by Dr. Cutchin in his diagnosis and treatment. At trial, a number of medical experts testified concerning the relevant standard of care owed by Dr. Cutchin and whether he complied with it. Dr. Cutchin testified in his own behalf and was cross-examined. Dr. Cutchin then offered character evidence purportedly to rehabilitate his credibility.

The Court of Appeals concluded that since the credibility of Dr. Cutchin had not been impeached, admission of character evidence was error warranting a new trial. Assuming, without deciding, that Dr. Cutchin was impeached, we conclude the character evidence was inadmissible because it was not limited to testimony about Dr. Cutchin's reputation.

II.

We begin our analysis by noting the general rule in this state that evidence of character is inadmissible in a civil action. *Jeffries v. Harris*, 10 N.C. (3 Hawks) 105, 105 (1824). This rule was authoritatively expressed in *McRae v. Lilly*, 23 N.C. (1 Ire.) 118, 120 (1840), where the Court noted that character evidence was inadmissible "unless the character of the party [was] put directly in issue by the nature of the proceeding. . . ." The character of a defendant physician in a medical malpractice action is irrelevant to the ultimate issue of whether the physician acted negligently. Such evidence tempts the jury to base its decision on emotion and to reward good people or punish bad people, rather than to render a verdict based upon the facts before them. *See* 1 Brandis on North Carolina Evidence § 103 at 385 (2d ed. 1982). The use of character evidence by a party to a civil action "might move the jury to follow the principles of poetic justice rather than rules of law." *Creech v. Creech*, 222 N.C. 656, 664, 24 S.E. 2d 642, 648 (1943).

Recognized exceptions to this rule of inadmissibility exist. One such exception concerns the use of character evidence to impeach the credibility of a party-witness in a civil action. *See Warlick v. White*, 76 N.C. 175, 176-77 (1877). Just as such evidence may be used to impeach, it may also be used to rehabilitate an impeached witness. "In whatever way the credit of the witness may be impaired, it may be restored or strengthened by . . . evidence tending to insure confidence in his veracity and in the truthful-

ness of his testimony." *Jones v. Jones,* 80 N.C. 246, 250 (1879). Thus, as a corollary to the exception that character evidence may be used to impeach a party-witness, an exception exists permitting the use of character evidence to corroborate or rehabilitate an impeached party-witness. "Where a party testifies *and the credibility of his testimony is challenged,* testimony that his general character is good is competent and proper evidence for consideration upon the truthfulness of his testimony." *Lorbacher v. Talley,* 256 N.C. 258, 260, 123 S.E. 2d 477, 479 (1962) (emphasis added). The important limitation upon the use of character evidence to corroborate or rehabilitate a party-witness is that the credibility of that party-witness must be challenged before the character evidence becomes admissible. "Until the credibility of a party who has testified in his own behalf has been impeached by imputations of his bias, inconsistencies in his statements, or otherwise, his good character may not be proved to corroborate his testimony." *State v. Johnson,* 282 N.C. 1, 26, 191 S.E. 2d 641, 658 (1972).

III.

The Court of Appeals concluded the credibility of Dr. Cutchin's testimony was not impeached; therefore the character evidence offered by him was inadmissible. We pass without deciding whether Dr. Cutchin's credibility was impeached because even if it was, the character evidence offered by Dr. Cutchin was inadmissible for the reason that it was not limited to Dr. Cutchin's reputation.

Under present North Carolina practice, when character is only collaterally in issue, as it is when offered either to impeach or rehabilitate a witness, proof by witnesses other than the person whose character is in question may only be by evidence of reputation. *State v. Taylor,* 309 N.C. 570, 308 S.E. 2d 302 (1983); *State v. Cox,* 303 N.C. 75, 277 S.E. 2d 376 (1981); *State v. Grundler,* 251 N.C. 177, 111 S.E. 2d 1 (1959), *cert. denied,* 362 U.S. 917 (1960). Unlike proof of character when character is directly in issue, proof of character to impeach or rehabilitate may not be by opinion evidence or evidence of specific acts of the person whose character is in question. *See* 1 Brandis on North Carolina Evidence § 113 at 419-20 (2d ed. 1982). Where character testimony is offered to prove another person's credibility as a witness, the

testimony must be limited to that person's reputation. *Taylor,* 309 N.C. 570, 308 S.E. 2d 302; *State v. Abernathy,* 295 N.C. 147, 244 S.E. 2d 373 (1978).

Defendant's character witness testified as follows:

Q. Dr. Wilkerson, are you personally acquainted with Dr. Lawrence Cutchin?

A. Yes, sir.

Q. Do you know his general character and reputation?

MR. MCLEOD: Objection.

THE COURT: Overruled.

Q. Do you know his general character and reputation?

A. Yes, sir.

Q. What is it?

MR. MCLEOD: Objection.

THE COURT: Overruled.

A. I have known Dr. Cutchin since he was a resident in Chapel Hill and since his starting practice in Tarboro. And he's not only a fine physician but also a public spirited individual who has done many things to help the health care of people in eastern North Carolina, particularly in his county.

MR. MCLEOD: Objection. Not responsive.

THE COURT: Denied.

Q. Go ahead.

A. I have also known him socially, and he's come to some social events here in Greenville and I have met him at State Medical Society meetings and other medical meetings, and have found him to be interested in the subject matter at hand but the welfare and health of people of eastern North Carolina but he had a fine spirit in trying to provide for that welfare.

MR. MCLEOD: Move to strike.

THE COURT: Denied.

Defendant's character witness did not testify as to defendant's reputation. Dr. Wilkerson testified to his opinion of defendant based on his personal knowledge rather than what he knew, if anything, about defendant's reputation. He described defendant as "not only a fine physician but also a public spirited individual" and as a person "interested in the subject matter at hand [concerns of the State Medical Society] and (sic) the welfare and health of the people of eastern North Carolina. . . ." These references reflected Dr. Wilkerson's opinion of defendant rather than defendant's reputation. Furthermore, Dr. Wilkerson stated that defendant "has done many things to help the health care of people in eastern North Carolina, particularly in his county." This statement deals, albeit generally, with defendant's specific acts, an impermissible area of inquiry during the direct examination of a character witness.

This case was hard fought and the evidence conflicting on the question of whether Dr. Cutchin's conduct comported with the applicable standard of care. We cannot say, therefore, that the error in admitting this character testimony was harmless. There is here the danger that the jury was unduly tempted to find for Dr. Cutchin on the issue of his negligence simply because they believed the inadmissible opinion testimony about his public spiritedness, things he had done for the people of eastern North Carolina and his interest in providing for their welfare.

For the reasons given herein, the decision of the Court of Appeals remanding this case for a new trial is

Affirmed.