670 So.2d 1 (1995)
James A. LANGSTON and Marilyn J. Langston
v.
Bobby KIDDER and K & T Farms, Inc.
No. 91-CA-00522-SCT.
Supreme Court of Mississippi.
August 10, 1995.
*2 David L. Walker, Batesville, for Appellant.
Michael T. Lewis, Pauline Shuler Lewis, Lewis & Lewis, Clarksdale, for Appellee.
En Banc.
BANKS, Justice, for the Court:
This appeal presents the question whether opinion testimony which relies upon the particular experience of the witness is "expert" testimony for purposes of discovery. We hold that it is. We reverse the judgment of the trial court because it allowed such testimony in contravention of our discovery rules. We also find error in the giving of two instructions.

I.
James A. Langston (James) and Marilyn J. Langston (Marilyn), initiated this action by filing their Complaint seeking $2,000,000.00 as actual and punitive damages for personal injuries alleged to have been sustained by them as a result of the negligence of the defendants.
The accident occurred on August 25, 1989, on a farm in Panola County, Mississippi, owned by Elbert Sides (Sides). James was a farm worker employed by Sides. On the day in question, James was helping to unload 50,000 pounds of rice grain from the trailer of a truck which had transported the grain to Sides' farm from Stuttgart, Arkansas. The truck was owned and operated by K & T Farms, Inc. (K & T), and was driven by Bob Pruett (Pruett), an employee of K & T.
Pruett was controlling the unloading operation by raising the bed of the trailer so as to allow the grain to pour out of a small window in the tailgate of the trailer. Both James and Pruett were standing at the back of the trailer to assure that the grain properly flowed out of the trailer. At a point, the grain discontinued its flow, whereupon Pruett told James to stand to the side while Pruett went to the cab of the truck and raised the bed higher in an effort to cause the grain to flow again. As Pruett raised the bed of the trailer, the tailgate burst open, accidentally dumping the remaining rice, burying James up to his neck in the grain.
According to James, he was struck by a chain which "flipped him" before he was buried in the grain. He was dug out from under the grain and an ambulance took him to the hospital. James sustained a broken arm and an injury to his back which was apparently the result of being struck in the back by the chain which was wrapped around the tailgate. James and Marilyn claim that the injuries interfered with their marital relations and that James was unable to work for a period.

II.
At trial, the alleged negligent conduct on the part of the defendants was the use of a chain and binder on the tailgate of the trailer. According to testimony, the purpose of the chain and binder was to provide additional support to the tailgate in an effort to prevent leakage of grain from a small opening at the base of the tailgate during hauling. The leakage was a common characteristic of the type trailer involved, and the chain/binder system had been used by the defendants for two or three years prior to the accident.
Bobby Kidder (Kidder), an employee and officer of the corporate defendant, K & T, testified that when Pruett arrived from Arkansas with the grain, he checked the tailgate and chain/binder and found them to be secure before the grain was delivered to Sides' farm. However, when Kidder arrived at the scene of the accident, the chain was loose and the binder was on the ground.
There were no eyewitnesses to the accident, other than James. Pruett had entered the cab of the truck to raise the bed and he could not see behind the bed of the truck. James testified that, when the bed of the truck was elevated, the tailgate burst open and the chain broke, striking him in the back. After the plaintiffs presented their case-in-chief, the defendants moved the court for a directed verdict in favor of both defendants. The court granted the motion only as to Kidder, which plaintiffs confessed, and dismissed the case against him with prejudice. At the conclusion of the trial, the jury returned a verdict for the remaining defendant, K & T.
*3 Aggrieved, James and Marilyn filed the instant appeal, asserting five errors which are repeated verbatim, as follows:
(1) The circuit court erred in permitting the Appellee, Bobby James Kidder, to testify as an expert witness concerning trucking standards and erred in failing to sustain the Appellants' objection to such testimony.
(2) The circuit court erred in permitting the Appellee, Bobby James Kidder, to testify as to trucking standards and customs and how K & T Farms, Inc., complied with those standards and customs with respect to the vehicle involved in the accident because he was not identified as an expert witness during pretrial discovery.
(3) The circuit court erred in granting the Appellee's jury instruction D-4.
(4) The circuit court erred in granting the Appellee's jury instruction D-9.
(5) The circuit court judge erred in failing to grant the Appellants' Motion For a New Trial.

III.
Appellants' first and second assignments of error encompass common issues, and emanate from the defendants' answers to the plaintiffs' interrogatories. Those answers listed Kidder as a person whom the defendants might call as a witness at trial. Kidder was not, however, listed as an expert witness in response to the plaintiffs' inquiry into the identity of expert witnesses. In fact, the defendants did not list any expert witnesses whom they intended to call at trial.
The nature of Kidder's testimony, which the plaintiffs found objectionable, concerned testimony regarding trucking standards and customs. The plaintiffs contend that such testimony constituted expert testimony, and since Kidder was not listed as an expert witness in K & T's answers to the plaintiffs' interrogatories, it was improper to allow him to give expert testimony. That contention rests upon the plaintiffs' assertion that Kidder's testimony, by its nature, should necessarily be characterized as expert testimony. We agree.
At trial, Kidder testified as a witness, responding to questions as follows:
Q. How long had you been using this chain and binder to keep the tailgate secure?
A. Two or three years.
Q. Do you know the standard or custom in the trucking industry, and particularly the dump truck industry, with regard to using these chains and binders?
BY MR. WALKER [Plaintiffs' Attorney]: Your Honor, we object. That wasn't a dump truck, and also, point number 2, we object to this witness as being an expert in that field. He wasn't offered as an expert and it wasn't in the interrogatory answers.
BY THE COURT: As to that particular question, I'll overrule the objection.
Q. Are you familiar with the standard in the trucking industry regarding using these chains and binders on these type trucks?
A. Yes, ma'am.
Q. This was a dump trailer?
A. Dump trailer.
Q. Dump trailer. What is that standard with respect to using these chains?
A. Most everybody has to do it to seal them up, make them hold tight.
Q. And so you did just about what everybody else does?
A. Yes ma'am.
For pure evidentiary concerns, it may matter little whether the evidence is called lay or expert opinion, if it is, in fact, helpful to the trier of fact and the proper foundation is laid. The problem comes before trial. Lay and expert witnesses are treated differently in discovery. See Miss.R.Civ.P. 26. For discovery purposes it is essential that we again clarify for the bench and bar alike what M.R.E. 701 means in relation to M.R.E. 702.
We have, in a series of cases, established a bright line rule. That is, where, in order to express the opinion, the witness *4 must possess some experience or expertise beyond that of the average, randomly selected adult, it is a M.R.E. 702 opinion and not a 701 opinion. Mississippi State Highway Commission v. Gilich, 609 So.2d 367, 377 (Miss. 1992) (holding that lay opinions are those which require no specialized knowledge however attained); Seal v. Miller, 605 So.2d 240, 244 (Miss. 1992) (question calling on police officer to respond based on experience as an officer investigating accidents is by definition not a lay opinion); Wells v. State, 604 So.2d 271, 279 (Miss. 1992) ("[I]f particular knowledge ... is necessary to assist the trier of fact ... then such testimony would never qualify as a lay witness opinion under M.R.E. 701."). Stated differently, if a trial court must delve into a witness' background to determine if he possesses the necessary education, experience, knowledge or training in a specific field in order for the witness to testify as to his opinions concerning that particular field, then M.R.E. 702 applies. Hardy v. Brantley, 471 So.2d 358, 366 (Miss. 1985).
It is important that we not blur the distinction between Rules 701 and 702, not so much for admissibility, as for notice and opportunity to prepare rebuttal. Expert testimony and opinions are subject to special discovery rules in both the civil and criminal arenas. Miss.R.Civ.P. 26(b)(4); Unif.Cr. R.Cir.Ct. 4.06(a)(4). We have also adopted a policy which dictates that Rule 702 witnesses be offered as such before offering Rule 702 testimony. Roberson v. State, 569 So.2d 691, 696 (Miss. 1990). This policy allows the opposing party ample opportunity to challenge the witness' qualifications to render such opinion before the question soliciting the opinion is posed in front of the jury.
Thus, even though this Court has recognized that some text writers note an overlap between rules 701 and 702, Guaranty National Ins. Co. v. Pittman, 501 So.2d 377 (Miss. 1987); Bryant, Inc. v. Walters, 493 So.2d 933 (Miss. 1986), litigants are forewarned to err on the side of disclosure, where the question is whether or how to respond to discovery inquiries regarding expert opinion. Here, Kidder's opinion as to industry standards was derived from specialized knowledge and, therefore, was subject to disclosure in response to the expert witness interrogatory. The trial court erred in ruling otherwise.
The reliance on McDaniel v. Mississippi Power & Light Co., 407 So.2d 112, 114 (Miss. 1981), for a contrary view is misplaced. Neither the interrogatory question, nor the answer given, found dispositive of the issue there is the same here. It should suffice to say that the interrogatory here did not limit its scope to experts "retained." It requested the name of any witness who the defendant may or will call to render an expert opinion. Any reliance on Dedeaux v. J.I. Case Co., Inc., 611 So.2d 880 (Miss. 1992), is similarly misplaced because that case did not deal with a discovery issue.
Because the court failed to take appropriate steps to address the failure to identify the expert witness in discovery, we reverse and remand for a new trial. Jones v. Hatchett, 504 So.2d 198 (Miss. 1987).

B.
In their third and fourth assignments of error, the Plaintiffs contend that the lower court erred in granting two jury instructions. We reach the issues because of the possibility of recurrence. Jury Instruction D-4 and D-9 contained the following language:
JURY INSTRUCTION D-4
The Court instructs you that if you find from a preponderance of the evidence that the sole proximate cause of the injuries to Plaintiffs was the negligence of third persons for whom these [sic] Defendant is not responsible or the combined negligence of such third persons and of the Plaintiff, James A. Langston, then it is your sworn duty to return a verdict in favor of Defendant.
JURY INSTRUCTION D-9

The Court instructs you that the law of Mississippi recognizes that all things mechanical eventually fail. The Court further instructs you that merely because the Plaintiff was injured as a result of a mechanical failure is not conclusive evidence of negligence. The *5 Plaintiff must prove that the Defendant was negligent, as defined in other instructions. You should not render a verdict for the Plaintiff based upon proof of mechanical failure without proof of negligence to a preponderance of the evidence.

"[W]ith any granted jury instruction challenged on appeal, two questions are necessarily implicated: Does the instruction contain a correct statement of the law? and, Is the instruction warranted by the evidence?" Hill v. Dunaway, 487 So.2d 807, 809 (Miss. 1986); see also Turner v. Temple, 602 So.2d 817, 823 (Miss. 1992). A party is entitled to have the jury instructed regarding a genuine issue of material fact so long as there is credible evidence in the record which would support the instruction. DeLaughter v. Lawrence County Hosp., 601 So.2d 818, 824 (Miss. 1992). Who, or what, caused the accident was a genuine issue of material fact; therefore, proper for consideration by the jury.
There was no direct evidence presented at trial indicative of negligence by third persons. The only possible third person to whom instruction D-4 could refer is Trailmobile. While evidence was presented which demonstrated that Trailmobile had manufactured the trailer, no evidence was presented with regard to negligence on the part of Trailmobile, nor was there any jury instruction defining such negligence or the negligence of any other third person. It follows that D-4 was both abstract and without evidentiary support. It was error to give it.
Jury Instruction D-9 stated a recognized maxim  all things mechanical may eventually fail, and such failure is not, per se, equivalent to negligence on the part of the owner or operator of the mechanical device or machinery. Regarding the failure of mechanical devices, in a prior case this Court stated that, "[t]hermostats are mechanical in nature, not safety appliances, and the evidence reflects the obvious fact that all mechanical devices may fail at one time or another... . Any mechanical contrivance may fail to work. ... Foreseeability cannot be imputed to State Stove under these facts." State Stove Manufacturing Company v. Hodges, 189 So.2d 113, 123 (Miss. 1966) (emphasis added), cert. denied, 386 U.S. 912, 87 S.Ct. 860, 17 L.Ed.2d 784 (1967). Similarly, here, in the case sub judice, the truck, tailgate, and/or the binder/chain could have simply failed to work properly without causation on the part of anyone.
The remainder of Jury Instruction D-9 is an expression of the antithesis of res ipsa loquitur. That same rationale has been expressed in a jury instruction which this Court previously reviewed. There, we stated that:
Defendant obtained an instruction that the mere fact that the accident occurred and plaintiff was injured of itself alone constitutes no evidence of any negligence or breach of other duty by General Motors, and does no [sic] raise a presumption that it was due to any act of negligence or other breach of duty. Since this is not a res ipsa loquitur case, this instruction was not error.
Creel v. General Motors Corporation, 233 So.2d 105, 109-10 (Miss. 1970) (citing DeLaughter v. Womack, 164 So.2d 762 (1964)).
While we conclude that the principles enunciated in the instruction complained of are proper, the wording of the instruction leaves something to be desired. It is neither necessary nor proper to state in an instruction of law that all things mechanical eventually fail. It should suffice to say that mechanical failure alone is insufficient to establish liability and that should the jury find that the injury was due to mechanical failure, it must find that either that the failure or the injury or both were proximately caused, at least in part, by some negligence on the part of the defendant.

IV.
Because the objection to the expert testimony was erroneously overruled and because Instruction D-4 was erroneously given, the judgment of the circuit court in favor of K & T Farms, Inc., is reversed and this matter is remanded to that court for further proceedings.
REVERSED AND REMANDED.
*6 HAWKINS, C.J., PRATHER, P.J., and SULLIVAN, PITTMAN, McRAE, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.
DAN M. LEE, P.J., concurs in result only.