# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1999-CA-00667-SCT

*TIMOTHY McCAFFREY*

*v.*

*KIM A. PUCKETT, D.C.*

## ON MOTION FOR REHEARING

| | |
|---|---|
| DATE OF JUDGMENT: | 12/16/1998 |
| TRIAL JUDGE: | HON. RICHARD W. McKENZIE |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | MICHAEL CLAYTON BAREFIELD |
| ATTORNEY FOR APPELLEE: | ANTHONY ALAN MOZINGO |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| DISPOSITION: | REVERSED AND REMANDED - 05/03/2001 |
| MOTION FOR REHEARING FILED: | 1/03/2001 |
| MANDATE ISSUED: | 5/24/2001 |

**EN BANC.**

**DIAZ, JUSTICE, FOR THE COURT:**

¶1. The Motion for Rehearing is granted. The original opinions are withdrawn, and these opinions are substituted therefor.

¶2. On February 23, 1994, Timothy McCaffrey filed a medical malpractice action against chiropractor Kim A. Puckett, D.C., in the Forrest County Circuit Court. In his complaint, McCaffrey alleged that Puckett negligently performed a spinal manipulation, causing him to suffer a herniated disc. Following a trial in the Forrest County Circuit Court, the jury returned a verdict in favor of Puckett, and judgment was entered accordingly. McCaffrey appeals, contending (1) the trial court erred in excluding Dr. Alan Bragman's expert testimony as to the cause of McCaffrey's injuries, (2) the trial court erred in overruling McCaffrey's objection to the improper character evidence offered by Dr. Alfred Norville, (3) the trial court erred in overruling McCaffrey's objection to expert opinion testimony offered by Dr. Kim A. Puckett, and (4) this Court should hold that a defendant in a medical or chiropractic malpractice action must rebut a plaintiff's expert opinion testimony as to breach of care and causation with contrary expert testimony or be subjected to a directed verdict in favor of the plaintiff. Finally, McCaffrey contends (5) the verdict is against the overwhelming weight of the evidence. We find that the trial court committed reversible error. Accordingly, we reverse and remand for a new trial.

## FACTS

¶3. On October 14, 1992, upon the advice of a co-worker, Timothy McCaffrey sought treatment from Kim A. Puckett, a chiropractor with offices in Petal, Mississippi. McCaffrey complained to Puckett of shoulder pain and a "crick" in his neck. Puckett first conducted a "pressure test," also referred to as a kinesiology exam, which revealed a weakness in the C6-C7 area. Puckett then performed the spinal

manipulation. The parties' descriptions of this procedure differ greatly. McCaffrey described the procedure as follows: "I was laying flat on my back . . . . He, I guess, made a wedge with his two hands, and he put them in between my shoulders on my neck, and put his chest on top of mine and lunged down with his body weight, and that's when I heard a very loud pop." Puckett disputes this account, contending "[I] very lightly put my hand on the spot that was opposite the spot that was weak, slightly rotated his head. There was an audible sound. Went back, tested it, and it was strong." Puckett maintains that he performed only a "light adjustment."

¶4. McCaffrey claims that following the spinal manipulation, his pain continued to worsen, becoming "unbearable." One week after his visit to Puckett, McCaffrey went to the emergency room at Forrest General Hospital complaining of pain and numbness in his right arm as well as a tingling sensation in his fingertips. Dr. Michael Lowry, a neurosurgeon, diagnosed McCaffrey as suffering from a herniation of the C6-C7 cervical disc. The following day, Dr. Lowry performed an anterior cervical diskectomy and fusion by removing the disc and grafting a bone from McCaffrey's hip in its place.

¶5. McCaffrey instituted a lawsuit against Puckett alleging that he negligently performed the spinal manipulation. Though the record is somewhat unclear on this point, both parties agree that the trial court ordered a mistrial after Puckett testified inconsistently at trial with his deposition testimony regarding the vicarious liability of a business management trust. An order was entered granting McCaffrey leave to file an amended complaint for the purpose of identifying and naming the business trust. McCaffrey filed an amended complaint on February 3, 1998, naming an "unidentified business trust" as a defendant and alleging that the trust was vicariously liable for all acts of negligence committed by Puckett. On March 11, 1998, McCaffrey filed a second amended complaint, naming Alpha Management Trust as an additional defendant. Ultimately, the parties stipulated that Alpha Management Trust was vicariously liable for any negligent act committed by Puckett.[1]

¶6. At trial, McCaffrey admitted that he had sustained a shoulder injury while working on an offshore oil rig, though he did not state when this occurred. Moreover, McCaffrey acknowledged that, approximately one year before his visit to Puckett, he was involved in an automobile accident in which he injured his lower back. Finally, McCaffrey admitted that three to four weeks before he saw Puckett, he had a co-worker attempt to "pop" his back. McCaffrey explained that he crossed his arms over his chest while the co-worker grabbed him from behind. According to McCaffrey, this procedure had no effect on his neck.

¶7. Following a trial in the Forrest County Circuit Court, the jury returned a verdict in favor of Puckett and the Alpha Management Trust. The circuit court entered judgment on that verdict, and McCaffrey appeals.

## DISCUSSION

### I. WHETHER THE TRIAL COURT ERRED IN EXCLUDING DR. ALAN BRAGMAN'S EXPERT TESTIMONY AS TO THE CAUSE OF McCAFFREY'S INJURIES

¶8. At trial, the deposition of Dr. Alan Bragman, a chiropractor, was read into evidence. McCaffrey contends that the trial court erred in refusing to admit into evidence that portion of the deposition in which Dr. Bragman testified that the spinal manipulation performed by Puckett caused McCaffrey's injury. McCaffrey relies upon *Mississippi Farm Bureau Ins. Co. v. Garrett*, 487 So. 2d 1320, 1327 (Miss. 1986), for the proposition that a chiropractor may qualify to give an expert opinion regarding the diagnosis, causation and prognosis of an injury.

¶9. The trial court refused to admit into evidence the following exchange which occurred during Dr. Bragman's deposition:

> Q. Dr. Bragman, do you have an opinion based upon your review of these documents as to a reasonable degree of chiropractic certainty concerning the causation or exacerbation of Mr. McCaffrey's herniated cervical disc?
>
> A. I believe within a reasonable degree of medical chiropractic certainty that based upon the records that I have looked at here, prior experience, knowledge, education, that this manipulation that was performed which breached the standard of care, either caused or substantially contributed to the disc injury.

Puckett objected to this testimony, arguing that Dr. Bragman was not qualified to express such an opinion. He maintained that "it's a question about causation. And I object to that question based on the fact that Dr. Bragman's testifying in his deposition having not seen the plaintiff, and in addition to that he's not familiar with whether there are any standards of care in this local area. . . ."

¶10. The trial court sustained Puckett's objection, finding that Dr. Bragman was not qualified to testify as to the cause of McCaffrey's injury. The trial court explained, "[t]ruthfully, I don't know enough about chiropractors, but I don't know that it is within their area of expertise as far as diagnosis of a herniated disc, so, yeah, I'm going to take that out." As further support for its decision, the trial court noted that Dr. Bragman based his opinion in part on a study written by a medical doctor rather than a chiropractor. Finally, the trial court relied upon the fact that Dr. Bragman had not examined McCaffrey, noting "I know he says he's reviewed the documents, but I don't know that in and of itself without a physical examination." [sic]

¶11. When expert opinion evidence is offered, there are three factors which must be considered: "(1) whether the subject matter of the proffered testimony is of the sort on which expert opinion evidence will assist the finder of fact; (2) whether the area of expertise is scientifically established so that valid opinion may be produced within that area; and, (3) finally, whether the witness is qualified." *West v. Sanders Clinic for Women, P.A.*, 661 So. 2d 714, 719 (Miss. 1995) (quoting *Hardy v. Brantley*, 471 So. 2d 358, 365-66 (Miss.1985)). Chiropractors may give expert opinions the same as would qualified witnesses in any other recognized discipline. *Garrett*, 487 So. 2d at 1327.

¶12. In *Garrett*, the plaintiff was involved in an automobile accident with an uninsured motorist. *Id.* at 1322. Approximately one year after the accident, the plaintiff "stumbled over a branch or twig and fell." He sought treatment from Dr. Harry A. Tillman, a chiropractor. *Id.* At trial, the plaintiff sought to have Dr. Tillman testify as an expert witness that the injuries were caused by the automobile accident. *Id.* at 1325. The defendant objected, contending that the chiropractor's opinions were within the field of medicine and thus could only be expressed by persons qualified as medical doctors. *Id.* at 1327.

¶13. On appeal, this Court held that a chiropractor may qualify to give an expert opinion regarding the diagnosis, causation and prognosis of an injury. *Id.* The Court began its analysis by recognizing that in a personal injury case, "expert opinion evidence regarding the nature and extent of the plaintiff's injuries, the cause therefor, and such matters as future disability and courses of treatment will assist the trier of fact to understand the evidence on these important points." *Id.* at 1326. Moreover, this Court held that the field of chiropractics is one within which expert opinions may generally be given. *Id.* at 1326. Finally, the Court found that Dr. Tillman qualified as an expert in the field of chiropractics, noting that "he has met all of the

requirements for licensing in the State of Mississippi and that he is in fact a licensed and practicing chiropractor."*Id.* at 1326-27.

¶14. In *Garrett*, this Court determined that (1) expert opinion evidence regarding the cause of the plaintiff's injuries will assist the trier of fact in a personal injury case, and (2) chiropractics is a field in which expert opinions may be given. Accordingly, the central issue in the present case is (3) whether Dr. Bragman is qualified to express an expert opinion as to the cause of McCaffrey's herniated disc. The trial court answered this question in the negative, finding that Dr. Bragman did not qualify as an expert because the diagnosis of a herniated disc is not within a chiropractor's area of expertise.

¶15. A chiropractor may be competent to give expert testimony *within the limited scope of the practice of chiropractics*. *Garrett*, 487 So. 2d at 1327 (emphasis added). Miss. Code Ann. § 73-6-1(1) (2000), defines the practice of chiropractic as follows: "[t]he practice of chiropractic involves the analysis of any interference with normal nerve transmission and expression, and the procedure preparatory to and complementary to the correction thereof, by adjustment and/or *manipulation of the articulations of the vertebral column* and its immediate articulations for the restoration and maintenance of health without the use of drugs or surgery." (emphasis added). Articulation is defined as "a joining or connecting together loosely so as to allow motion between the parts." Stedman's Medical Dictionary (1982). Chiropractics therefore includes manipulation of the joints of the human body and would seem to encompass the spinal manipulation performed by Puckett in the instant case.

¶16. Dr. Bragman qualifies as an expert in the field of chiropractics. He testified that he had been practicing chiropractics since graduating from the National College of Chiropractic in 1982. Dr. Bragman is licensed in the state of Georgia where he maintains his offices. Finally, Dr. Bragman confined his testimony to chiropractics, prefacing his opinion "I believe within a reasonable degree of medical chiropractic certainty . . . ."

¶17. The chiropractor *Garrett* found to be qualified as an expert witness "met all of the requirements for licensing in the State of Mississippi and . . . [was] in fact a licensed and practicing chiropractor." Dr. Bragman is not licensed in Mississippi. However, this Court has held that "where the expert lives or where he or she practices his or her profession has no relevance *per se* with respect to whether a person may be qualified and accepted by the court as an expert witness." *Hall v. Hilbun*, 466 So. 2d 856, 874 (Miss. 1985). So long as the expert qualifies, i.e., is familiar with the national standard of care, it should not matter that Dr. Bragman practices in Georgia.

¶18. Contrary to the trial court's findings, Dr. Bragman's reliance upon an article written by a medical doctor does not prevent him from expressing an opinion regarding the cause of McCaffrey's injury. The fact that a medical doctor may be better qualified to render the same opinion does not preclude the chiropractor from testifying as an expert witness. *Garrett*, 487 So. 2d at 1327. Moreover, in addition to relying upon an article written by a medical doctor, Dr. Bragman also relied upon an article written by a chiropractor, entitled "Contraindications and Complications of Spinal Manipulative Therapy."

¶19. The fact that Dr. Bragman did not treat McCaffrey is of no moment. Our rules of evidence state that "[t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before a hearing." M.R.E. 703. In *Sibley v. Unifirst Bank for Sav.*, 699 So. 2d 1214, 1219 (Miss. 1997), the plaintiff contended that the Mississippi Workers' Compensation Commission erred in relying upon the testimony of a physician who had not examined her but

who had based her evaluation of the plaintiff upon medical records and observation of the trial. This Court held that the fact that the expert witness did not examine the plaintiff goes to the weight to be given the physician's testimony, not its admissibility. *Id.*

¶20. Puckett contends that the trial court correctly found Bragman was not qualified to render an expert opinion as to causation because Bragman was not familiar with the standard of care in Petal, Mississippi. We disagree. In *Hall v. Hilbun*, 466 So. 2d 856 (Miss. 1985), this Court abolished the locality rule and adopted the national standard of care which provides "each physician has a duty to use his or her knowledge and therewith treat through medical recovery, each patient, with such reasonable diligence, skill, competence, and prudence as are practiced by minimally competent physicians in the same specialty or general field of practice throughout the United States, who have available to them the same general facilities services, equipment and options." *Id.* at 873. The trial court erred in excluding Dr. Bragman's testimony as to the cause of McCaffrey's injuries.

## II. WHETHER THE TRIAL COURT ERRED IN OVERRULING McCAFFREY'S OBJECTION TO THE IMPROPER CHARACTER EVIDENCE OFFERED BY DR. ALFRED NORVILLE

¶21. At trial, Dr. Alfred Norville, a member of the State Board of Chiropractic Examiners, testified on Puckett's behalf. Dr. Norville stated that during the time that he had served on the Board, Puckett had never been subject to discipline nor had a complaint been filed against him. McCaffrey claims that this evidence served only to bolster Puckett's character. McCaffrey contends that the character evidence offered by Dr. Norville was simply not relevant to whether Puckett was negligent in his treatment of McCaffrey and whether that negligence proximately caused McCaffrey's injuries.

¶22. It is clear that Dr. Norville's testimony constituted character evidence. Professor McCormick has explained that "[c]haracter is a generalized description of a person's disposition, or of the disposition in respect to a general trait, such as honesty, temperance or peacefulness." 1 McCormick On Evidence § 195, at 687 (5th ed. 1999). McCormick states that "[i]f we speak of a character for care, we think of the person's tendency to act prudently in all the varying situations of life -- in business, at home, in handling automobiles and in walking across the street." *Id.* In the instant case, the testimony that Puckett had never been disciplined by the State Board of Chiropractic Examiners would tend to show that he was a careful, non-negligent chiropractor.

¶23. "Generally, character evidence is not admissible in civil cases" unless character is an issue in the case. *Daniels ex rel. Glass v. Wal-Mart Stores, Inc.*, 634 So. 2d 88, 93 (Miss. 1993). "[I]t is only when good character or reputation is the issue, such as in slander, false imprisonment and like causes that such evidence is admissible." *Miller's Mut. Fire Ins. Co. v. King*, 32 Miss. 260, 267, 98 So. 2d 662, 663 (1957).

¶24. There is no Mississippi case law directly on point. However, at least two jurisdictions have determined that "bolstering" of a defendant physician's character is impermissible. In *Holiday v. Cutchen*, 316 S.E.2d 55, 57 (N.C. 1984), the North Carolina Supreme Court held that "[t]he character of a defendant physician in a medical malpractice action is irrelevant to the ultimate issue of whether the physician acted negligently. Such evidence tempts the jury to base its decision on emotion and to reward good people or punish bad people, rather than to render a verdict based upon the facts before them." In an unpublished decision, the Court of Appeals of Arkansas reached a similar result, finding that "[a] medical malpractice lawsuit is

ordinarily thought of as involving a claim for negligence in the use of a procedure or, perhaps, negligent failure to diagnose. In these typical cases, a practitioner's traits of good character or reputation for honesty are unlikely to have any bearing on his or her liability for malpractice." *Clark v. Bakker*, 1999 WL 349808, *2 (Ark. Ct. App. 1999)

¶25. The trial court erred in allowing Dr. Norville to testify as to Puckett's disciplinary history. It would clearly be wrong under M.R.E. 404 to offer evidence that Puckett *had* in fact been disciplined. Offering evidence of the converse is just as improper. This ruling also constitutes reversible error.

### III. WHETHER THE TRIAL COURT ERRED IN OVERRULING McCAFFREY'S OBJECTION TO EXPERT OPINION TESTIMONY OFFERED BY DR. KIM A. PUCKETT

¶26. McCaffrey argues that the trial court erred in allowing Puckett, a fact witness, to express an expert opinion when he had not been designated as an expert in his answers to McCaffrey's interrogatories. Specifically, McCaffrey objects to the following testimony by Puckett that he did not deviate from the standard of care in his treatment of McCaffrey:

> Q. Alright. Admitting that you were inadequate in your record keeping, does that in any way connect to the fact that you deviated from any kind of standard of care in your treatment of Mr. McCaffrey?
>
> A. No, sir. I did not deviate in any care.
>
> MR. BAREFIELD: Your Honor, I believe the witness is testifying as a fact witness and not to provide opinion testimony.
>
> THE COURT: Alright. I'll overrule and allow him to answer.
>
> Q. What did you say your answer was?
>
> A. I did not deviate from the standard of care of Mr. McCaffrey.

¶27. Mississippi Rule of Civil Procedure 26(b)(4) states in pertinent part: "Discovery of facts known and opinions held by experts . . . may be obtained only as follows . . . . A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion."

¶28. Whether a discovery violation occurred depends upon the characterization of Puckett's testimony. In *Langston v. Kidder*, 670 So. 2d 1, 3-4 (Miss. 1995), this Court noted the importance of distinguishing between M.R.E. 701, lay opinion, and M.R.E. 702, expert opinion, for the purposes of discovery. In that case, a defendant who had not been listed as an expert witness in the answers to interrogatories testified as to the standards and customs in the trucking industry. *Id.* at 3. This Court held that the trial court erred in allowing the witness to testify, explaining

> [w]e have, in a series of cases, established a bright line rule. That is, where, in order to express the opinion, the witness must possess some experience or expertise beyond that of the average, randomly

selected adult, it is a M.R.E. 702 opinion and not a 701 opinion. . . . . Stated differently, if a trial court must delve into a witness's background to determine if he possesses the necessary education, experience, knowledge or training in a specific field in order for the witness to testify as to his opinions concerning that particular field, then M.R.E. 702 applies.

*Id.* at 3-4. Because the witness's testimony as to trucking industry customs was derived from specialized knowledge, it was subject to disclosure in response to the expert witness interrogatory. *Id.* at 4.

¶29. In the present case, the opinion offered by Puckett as to his compliance with the standard of care necessarily requires expertise in the field of chiropractics. If, on remand, Puckett attempts to give an expert opinion, he must be designated as an expert witness in his responses to discovery. "[T]hough this Court has recognized that some text writers note an overlap between rules 701 and 702, litigants are forewarned to err on the side of disclosure, where the question is whether or how to respond to discovery inquiries regarding expert opinion." *Langston*, 670 So. 2d at 4.

¶30. McCaffrey also contends that Puckett offered an expert opinion when he was asked "if Mr. McCaffrey had a herniated disc when he came into your office, would that have shown up on a plain x-ray at your office?" However, Puckett never responded to the question which was ultimately withdrawn by defense counsel. There is no error because Puckett never answered the question.

¶31. Finally, defense counsel asked Puckett, "Would you state for the record whether or not there's any standard, any rule, any law, any statute, or any of the above, that you' ve ever read or have been taught in any school that requires that any of those tests be performed before you do a chiropractic manipulation?" McCaffrey's attorney objected, contending "[i]f he's trying to get in some opinion testimony, then he ought to have an expert up here to do it, and we object to this opinion testimony from a fact witness." Puckett admitted he had no personal knowledge to which the court stated "[w]ell, if you do not, then you can't testify." Again, Puckett never responded to the question. We find no error.

### IV. WHETHER THIS COURT SHOULD HOLD THAT A DEFENDANT IN A MEDICAL OR CHIROPRACTIC MALPRACTICE ACTION MUST REBUT A PLAINTIFF'S EXPERT OPINION TESTIMONY AS TO BREACH OF CARE AND CAUSATION WITH CONTRARY EXPERT TESTIMONY OR BE SUBJECTED TO A DIRECTED VERDICT FOR PLAINTIFF

¶32. McCaffrey claims that because Puckett did not present an expert witness to rebut his prima facie case of negligence that the lower court should have found for him on his claim as a matter of law. He urges this Court to hold that in a medical malpractice case, a defendant's failure to present expert testimony necessitates a directed verdict in the plaintiff's favor. He contends that "[i]f a plaintiff is required to present the evidence, then conversely, upon the shifting of the burden of proof to defendant, it is only logical that the defendant be required to introduce credible expert testimony or be faced with the inescapable result of having failed to rebut the plaintiff's prima facie case of negligence." We decline to adopt such a rule.

¶33. First, McCaffrey has not cited any authority, nor can any be found, which indicates that once a prima facie case of negligence is presented that the burden of proof shifts to the defendant who must rebut or lose. To present a prima facie case of medical malpractice, a plaintiff, (1) after establishing the doctor-patient relationship and its attendant duty, is generally required to present expert testimony (2) identifying and articulating the requisite standard of care and (3) establishing that the defendant physician failed to conform

to the standard of care. In addition, (4) the plaintiff must prove the physician's noncompliance with the standard of care caused the plaintiff's injury, as well as proving (5) the extent of the plaintiff's damages. *Ladner v. Campbell*, 515 So. 2d 882, 887-88 (Miss. 1987). "Mississippi case law demands that in a medical malpractice action, negligence cannot be established without medical testimony that the defendant failed to use ordinary skill and care. " *Sheffield v. Goodwin*, 740 So. 2d 854 (¶ 5) (Miss. 1999). There is no such case requiring that the defendant offer expert testimony or risk a directed verdict.

¶34. Other jurisdictions considering the issue have refused to adopt such a rule, finding that, "[t]he proper meaning of 'prima facie case' is that quantum of evidence tending to prove each material fact that a plaintiff must introduce to sustain his burden of going forward with the evidence . . . . With the evidence in this posture, the trier of the facts may reasonably find for the plaintiff by drawing the permissible inferences favorable to him. This does not mean that the plaintiff is entitled to a directed verdict or that the burden is shifted to the defendant." *Lamarca v. United States*, 31 F.Supp.2d 110, 124 (E.D.N.Y. 1998). *See also Mays v. Children's Hosp.*, 541 N.Y.S.2d 1003, 1004 (N.Y. App. Div. 1989) (noting that "[a]lthough plaintiff established a prima facie case [of] defendant's negligence . . . it does not follow that plaintiff is entitled to a judgment as a matter of law"); *Nicholas v. Reason*, 447 N.Y.S.2d 55, 56-57 (N.Y. App. Div. 1981) (denying motion for judgment as a matter of law to defendants because plaintiff's medical expert established elements of malpractice and question of whether malpractice occurred was for the jury to consider); *Viti v. Franklin Gen. Hosp.*, 593 N.Y.W.2d 840, 841 (N.Y. App. Div. 1993) (holding that "a conflict of medical opinion . . . should be resolved by a finder of fact").

¶35. There is no Mississippi case which explicitly holds that the question of negligence of a physician is one for the jury to decide where there is evidence tending to show failure to exercise the requisite professional skill and care in treating or caring for the patient. However, in *Scafidel v. Crawford*, 486 So. 2d 370, 374 (Miss. 1986), this Court held that where there was ample evidence to support the defendant physicians' position, the question of whether the physician exercised the appropriate standard of care was a question of fact properly submitted to the jury for its determination.

## V. WHETHER THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE ADMISSIBLE EVIDENCE

¶36. McCaffrey contends that if the improperly admitted evidence is excluded, then the remaining evidence is insufficient to support the jury's verdict. Because we reverse on other grounds, this assignment of error is not addressed.

## CONCLUSION

¶37. The trial court erred in (1) excluding Dr. Alan Bragman's testimony as to the cause of Timothy McCaffrey's injuries and (2) admitting Dr. Alfred Norville's testimony concerning Dr. Kim A. Puckett's disciplinary record. Therefore, the judgment of the Forrest County Circuit Court is reversed, and this case is remanded to that court for a new trial consistent with this opinion.

¶38. **REVERSED AND REMANDED.**

**PITTMAN, C.J., BANKS AND McRAE, P.JJ., AND EASLEY, J., CONCUR. WALLER, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SMITH, MILLS AND COBB, JJ.**

**WALLER, JUSTICE, DISSENTING:**

¶39. I would affirm the decision of the trial court to enter judgment according to the jury's verdict in favor of Dr. Puckett, and I respectfully dissent from the majority decision to reverse and remand the case for a new trial. Exclusion of the causation testimony given by Dr. Bragman in this case was harmless error.

¶40. The trial court excluded a portion of Dr. Bragman's deposition in which he stated that it was his opinion within a reasonable degree of chiropractic certainty that the spinal manipulation caused or substantially contributed to the disc injury. This was not the only expert testimony offered on the subject of causation, nor was it arguably the best testimony on the issue. McCaffrey also introduced into evidence the expert testimony of Dr. Lowry, the neurosurgeon who operated on McCaffrey. Dr. Lowry's testimony included McCaffrey's medical history, an explanation of the actual injury suffered, and how it was treated. (Dr. Bragman never personally examined McCaffrey, but relied on the records of Drs. Puckett and Lowry in forming his opinion.) Dr. Lowry concluded that it was his opinion that it was likely that the spinal manipulation caused or exacerbated the disc herniation. Since McCaffrey was able to introduce the expert opinion of Dr. Lowry, the exclusion of Dr. Bragman's opinion is harmless error. Given the fact that identical expert testimony from a more reliable and credible source did not convince the jury that Dr. Puckett was negligent, it is extremely unlikely that a jury would have concluded differently based upon Dr. Bragman's testimony. Since McCaffrey cannot show any actual prejudice, he is not entitled to a new trial on this error. *Terrain Enters., Inc. v. Mockbee*, 654 So. 2d 1122, 1131 (Miss. 1995).

¶41. I also disagree with the majority's finding that this matter should be reversed and remanded for a new trial based on the erroneous admission of Dr. Norville's testimony concerning Dr. Puckett's disciplinary record. Even though character evidence is not admissible unless character is at issue, *Daniels ex rel. Glass v. Wal-Mart Stores, Inc.*, 634 So. 2d 88, 93 (Miss. 1993), admission of improper character evidence does not constitute reversible error in this case. "[F]or a case to be reversed on the admission or exclusion of evidence, it must result in prejudice and harm or adversely affect a substantial right of a party." *Terrain Enters., Inc. v. Mockbee*, 654 So. 2d at 1131. There is absolutely no support in the record or the briefs that a party's substantial rights have been prejudiced in any way.

¶42. I, therefore, respectfully dissent.

**SMITH, MILLS AND COBB, JJ., JOIN THIS OPINION.**

1. Puckett testified that the Alpha Management Trust is funded with the income generated by his chiropractic practice. Puckett is the manager of the trust and is paid a salary therefrom.