GRAVES, Presiding Justice,
Dissenting:
¶ 33. I disagree with the majority’s finding that the trial court did not abuse its discretion in determining that Dr. Hal-bridge’s testimony regarding the Worthy baby’s cause of death was unreliable and thus inadmissible. I agree with the majority’s summary of the law regarding admissibility of expert testimony, but I conclude that the law was not appropriately applied. Regarding the second issue — whether the trial court erred in granting summary judgment after the jury had been empaneled — I agree, for reasons different than those provided by the majority, that the trial court’s granting of “summary judgment and directed verdict” does not constitute reversible procedural error; however, I disagree with the majority’s finding that it was not error for the trial court to grant summary judgment in this matter. Therefore, I must dissent and would reverse and remand this case for a new trial in which Dr. Halbridge’s testimony regarding the cause of the baby’s death would be deemed rehable and admitted.
¶ 34. The majority provides a thorough summary of the law regarding the admissibility of expert testimony; however, I would add to its summary that “the most important question is not whether one ... expert is more qualified than the [other], but rather, whether an expert’s testimony is reliable.” Huss v. Gayden, 571 F.3d 442, 455 (5th Cir.2009). This Court has emphasized that when a proposed expert “ ‘possesses peculiar knowledge or information regarding the relevant subject matter which is not likely to be possessed by a layman[,]’ ” it is better that attacks on the expert’s qualifications and methods be directed toward the weight of the testimony rather than its admissibility. Hooten v. State, 492 So.2d 948, 948-49 (Miss.1986) (quoting and citing Henry v. State, 484 So.2d 1012 (Miss.1986)). See also McDonald v. Mem’l Hosp. at Gulfport, 8 So.3d 175, 183 (Miss.2009) (Kitchens, J„ concurring in part and dissenting in part) (“Rule 702 is broadly constructed and broadly construed.... It does not purport to restrict expert testimony to the domain of a tiny class of geniuses, but merely to differentiate between experts and laypersons. Rule 702 sets a ‘low threshold for competency’ in favor of courts’ ‘preference for leaving matters of credibility to the judgment of the jury....’ ... Today, the national consensus remains broadly permissive of expert testimony; a party seeking to admit expert testimony need only demonstrate ‘that the witness has sufficient skill or knowledge related to the pertinent field or calling that his inference will probably aid the trier in the search for truth.’ ” (internal citations omitted)). In other words, questions regarding which of two or more experts is most qualified should be left for the jurors to decide, based on their observation of the direct- and cross-examinations of the experts.
¶ 35. Applying the law laid out in the majority opinion and directly above, I conclude that the trial court abused its discretion in excluding Dr. Halbridge’s testimony as to cause of death. As required by Rule 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), Dr. *619 Halbridge’s opinions were based on sufficient facts and grounded in science; his opinions were not merely subjective belief or unsupported speculation.
¶ 36. Dr. Halbridge is an experienced obstetrician-gynecologist who cares for women with high-risk pregnancies and is knowledgeable about placental pathology. He has been a board-certified obstetrician-gynecologist since 1978. He has cared for women with high-risk pregnancies for more than thirty-five years, managing thousands of such pregnancies throughout his years of practice. Dr. Halbridge had to become knowledgeable about obstetrical and gynecological pathology in order to become a board-certified obstetrician-gynecologist. Dr. Halbridge had to be trained in placental pathology to be able to care for his patients and understand what has happened to his patients’ fetuses. On a weekly basis, he reviews reports of placental autopsies prepared by pathologists.
¶ 37. Dr. Halbridge based his opinions regarding the Worthy baby’s cause of death on his experience as an obstetrician-gynecologist, his review of Worthy’s medical records and the autopsy report, and his review of various medical textbooks and literature. He testified that the literature he referenced and provided at his deposition associates antepartum testing with pregnancy outcome; that the literature is reliable in the field of obstetrics-gynecology; that it is relied upon by obstetricians-gynecologists to form opinions and treat their patients; and that it is used as a teaching tool in medical schools throughout the country. Moreover, Dr. Halbridge testified that the diagnoses of gestational diabetes and placental insufficiency — the two conditions he believes caused the baby’s death — are clinical, not pathological, diagnoses.
¶38. Given Dr. Halbridge’s education, training, and experience, and his review of Worthy’s medical records, the autopsy report, and relevant medical literature, it is evident that Dr. Halbridge’s opinions as to cause of death are grounded in science and not merely a subjective belief or unsupported speculation. See Poole v. Avara, 908 So.2d 716, 723 (Miss.2005) (“Scientific knowledge means something more than unsupported speculation or subjective belief that is grounded in methods and procedures of science. Certainly the witnesses’ testimony here is not mere conjecture akin to astrology or something of the sort; the testimony is a medical opinion....”). It is also evident that Dr. Halbridge — having reviewed Worthy’s medical records, the autopsy report listing conditions “consistent with fetoplacental insufficiency,”[6] and medical literature associating antepartum testing with pregnancy outcome — based his opinions on sufficient facts.
II39. Furthermore, experts can give opinions not based on firsthand knowledge or observation. Miss. Transp. Comm’n v. McLemore, 863 So.2d 31, 39 (Miss.2003). Therefore, the fact that Dr. Halbridge based his opinions on review of Worthy’s medical records and the autopsy report, as opposed to review of the placental tissues under the microscope, does not indicate that his opinions were unreliable.
¶ 40. In addition, in medical-malpractice actions, a specialist in a particular branch within a profession is not required; it is the expert’s knowledge and experience, not his professional degree or title that governs the threshold question of admissibility. Causey v. Sanders, 998 So.2d 393, 403 (Miss.2009); Sheffield v. Goodwin, 740 So.2d 854, 857 (Miss.1999). See also Univ. of Miss. Med. Ctr. v. Pounders, 970 *620 So.2d 141, 146 (Miss.2007) (where this Court found that a neurologist who was knowledgeable in the relevant area and who had treated patients similar to the plaintiff was qualified to offer opinions regarding the diagnosis and causes of the plaintiffs pneumonia, even though he was not a pulmonologist); Bullock v. Lott, 964 So.2d 1119, 1123, 1127-29 (Miss.2007) (where this Court found that the testimony of a family-practice physician was reliable as to standard of care, breach, and causation, despite the defendant’s vigorous attack of the family-practice physician’s qualifications during voir dire and cross-examination, and despite the contrary testimony of other expert witnesses. This Court rejected the defendant’s assertion that the family-practice physician “was not qualified to render opinions solely within the purview of a neurosurgeon, radiologist or pathologist....”). Thus, it is Dr. Hal-bridge’s experience in managing high-risk pregnancies and his training in and knowledge of pathology that are relevant to the inquiry of “reliability,” not the fact that he is an obstetrician-gynecologist as opposed to a pathologist.
¶ 41. The majority is correct that “only if the witness possesses scientific, technical, or specialized knowledge on a particular topic will he qualify as an expert on that topic” (Sheffield, 740 So.2d at 857); however, as explained above, Dr. Hal-bridge possesses scientific and specialized knowledge regarding high-risk pregnancies and placental pathology — the topic at issue.
¶ 42. The determination of admissibility must focus on whether an expert’s testimony is reliable, not on whether another available expert is more qualified. Huss, 571 F.3d at 455. See also McCaffrey v. Puckett, 784 So.2d 197, 203 (Miss.2001) (where this Court, in finding that the testimony of a chiropractor as to cause of the plaintiffs injuries was reliable, explained: “The fact that a medical doctor may be better qualified to render the same opinion does not preclude the chiropractor from testifying as an expert witness”). Relatedly, the adversary system — i.e., cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof — is the traditional and appropriate means of attacking the qualifications of an expert whose testimony meets the threshold reliability requirement. McLemore, 863 So.2d at 36, 39.[7] See also Causey, 998 So.2d at 403 (“ ‘[Wjhen there is a conflict of expert medical opinion, this Court has held it to be within the province of the fact-finder to determine the cause of death.’ ”). Thus, the question of whether Dr. Vogler, the plaintiffs’ expert in pathology — or any other expert for that matter — was more qualified than Dr. Hal-bridge to testify regarding the cause of the baby’s death is irrelevant. The trial court was in error to base its ruling in whole or in part on its determination that Dr. Vo-gler was more qualified than Dr. Hal-bridge to testify regarding cause of death. Vigorous cross-examination of Dr. Hal-bridge (during his deposition testimony) by defendants was the appropriate means of revealing to the jury any weaknesses or *621 inadequacies in Dr. Halbridge’s qualifications and opinions.
¶ 48. Lastly, the majority is in error to find that Dr. Halbridge’s opinion is unreliable because “the [autopsy] report on which he rested his opinion reached an inconclusive result.” Maj. Op. at ¶24. First, Dr. Halbridge did not “rest his opinion” on the autopsy report; rather, it was one of several sources of information upon which he based his opinion. Second, Dr. Halbridge was considering the report and its contents as a whole; i.e., he was considering the conditions listed in the report that the report describes as “consistent with fetoplacental insufficiency,” not merely considering the final, inconclusive conclusion the author of the report reached. Needless to say, an expert can review and consider a report without adopting everything it says.
¶ 44. Therefore, I conclude that the trial court abused its discretion in finding Dr. Halbridge’s testimony as to cause of death unreliable and inadmissible.
¶ 45. Regarding the second issue— whether the trial court erred in granting summary judgment after the jury had been empaneled — I agree, for reasons different than those provided by the majority, that the trial court’s granting of “summary judgment and directed verdict” does not constitute reversible procedural error; however, I disagree with the majority’s finding that it was not error for the trial court to grant summary judgment in this matter.
¶ 46. The jury for this matter was empaneled on April 29, 2008, then released, with instructions to return the following morning. On April 29, after the jury was released, the trial court heard the defendants’ motion to exclude Dr. Halbridge’s testimony as to cause of death. The next morning, the trial court granted the defendants’ motion, stated that it would be granting summary judgment and/or directed verdict, and excused the jurors from the case. On September 4, 2008, the trial court filed orders with the clerk, granting the defendants’ motion to exclude Dr. Hal-bridge’s testimony as to causation and “granting summary judgment and directed verdict.”
¶ 47. As the plaintiffs point out, Hurst v. Southwest Mississippi Legal Services Corporation states that summary judgment cannot be granted once the trial has begun (Hurst v. Sw. Miss. Legal. Servs. Corp., 610 So.2d 374, 384-85 (Miss.1992) (overruled on other grounds )).[8] However, I conclude that the trial court’s granting of “summary judgment and directed verdict” in the instant case does not constitute reversible procedural, error because, as the defendants point out, the rules of civil procedure discourage battles over mere form and encourage decisions on the merits rather than determinations based on technicalities. See Miss. R. Civ. P. 1 cmt. It would be a waste of judicial resources for this Court to remand this case to the trial court, only to have the trial court restyle its order of dismissal as an order granting “directed verdict,” as opposed to an order granting “summary judgment and directed verdict.”
¶ 48. Therefore, the trial court did not commit reversible procedural error by styling its order of dismissal as an order “granting summary judgment and directed verdict”; however, the trial court was in error to dismiss the case, because Dr. Hal-bridge’s testimony as to cause of death was rehable, and thus the plaintiffs made *622 out a prima facie case of medical negligence, which they should have been permitted to present to the jury.
¶ 49. For the foregoing reasons, I must respectfully dissent and would reverse and remand this case for a new trial in which Dr. Halbridge’s testimony regarding the cause of the baby’s death would be deemed reliable and admitted.
KITCHENS and CHANDLER, JJ., join this opinion.

. The case record suggests that the terms "placental insufficiency," "fetal placental insufficiency,” and "fetoplacental insufficiency” have the same or similar meanings.

. If the trial court concludes that the evidence supporting a position is insufficient to allow a reasonable juror to conclude that the position is more likely true than not, the trial court can direct a judgment or grant summary judgment. McLemore, 863 So.2d at 36 (citing Daubert, 509 U.S. at 596, 113 S.Ct. 2786). These traditional devices, rather than the wholesale exclusion of the testimony, are the appropriate safeguards where the testimony meets the standards of Rule 702. McLemore, 863 So.2d at 37; Daubert, 509 U.S. at 596, 113 S.Ct. 2786. "Absent other grounds to exclude, an expert's testimony is presumptively admissible when relevant and reliable." McLemore, 863 So.2d at 39.

. Notably, unlike in Hurst, in the instant case, the jury, while having been empaneled, never heard opening arguments of either party.