RODNEY EUGENE DAVIS, Plaintiff v. ELBERT A. RUDISILL, JR., KATHY MARGARET RUDISILL (formerly KATHY MARGARET RICHARDSON), SOUTH PARK MEDICAL CLINIC, P.A., and RUDISILL FAMILY PRACTICE, P.A., Defendants

No. COA10-687

(Filed 15 February 2011)

**1. Pleadings— answer—leave to amend granted—no abuse of discretion**

The trial court did not abuse its discretion in a medical malpractice case by allowing defendants to amend their answer during trial. There was no undue delay in the amendment simply because the amendment took place during trial and, given the evidence presented during discovery and then at trial, plaintiff could not show prejudice.

**2. Evidence— public file—motion in limine—admission unduly prejudicial—no abuse of discretion**

The trial court did not abuse its discretion in a medical malpractice case by granting defendants' motion *in limine* precluding

the admission of Dr. Rudisill's North Carolina State Medical Board public file. The evidence was unduly prejudicial and could have potentially misled the jury pursuant to N.C.G.S. § 8C-1, Rule 403.

### 3. Medical Malpractice— motion for new trial denied—costs awarded defendant—no abuse of discretion

The trial court did not abuse its discretion in a medical malpractice case by denying plaintiff's motion for a new trial filed pursuant to N.C.G.S. § 1A-1, Rule 59 and subsequently awarding costs to defendant.

Appeal by plaintiff from judgment entered 5 June 2009 and orders entered 4 September 2009 by Judge Kevin M. Bridges in Catawba County Superior Court. Heard in the Court of Appeals 1 December 2010.

*Grant Richman PLLC, by Robert M. Grant, Jr., for plaintiff-appellant.*

*Shumaker, Loop & Kendrick, LLP, by Scott M. Stevenson, Karen H. Stiles, and Scott A. Hefner, for defendants-appellees.*

HUNTER, Robert C., Judge.

Rodney Eugene Davis ("plaintiff") appeals from a judgment entered 5 June 2009 after a jury found the defendants Dr. Elbert A. Rudisill ("Dr. Rudisill"), Kathy Margaret Rudisill ("Mrs. Rudisill"), South Park Medical Clinic, P.A. ("South Park"), and Rudisill Family Practice, P.A. (collectively, "defendants") not liable for plaintiff's injuries in a medical malpractice action. Plaintiff also appeals from the trial court's 4 September 2009 orders denying his motion for a new trial and awarding costs to defendants. After careful review, we affirm.

### Background

On 28 February 2004, plaintiff was transported by ambulance to the emergency room at Grace Hospital. It was determined that plaintiff was suffering from atrial fibrillation, heart attack, and stroke. Plaintiff's wife, Terri Pearson ("Mrs. Pearson"), informed the emergency room physician that plaintiff had been feeling weak for approximately one week and had some chest pain and a cough. On 23 February 2004,

plaintiff was seen by his family physician, Dr. Rudisill, at South Park. It is undisputed that Plaintiff was examined by nurse Gail Watson ("Ms. Watson"), who reported that plaintiff had a pulse rate of 142 beats per minute. Plaintiff claimed in his complaint and at trial that he was sent home and told to return for blood work at a later date. Defendants claimed in their answer and at trial that a cardiac evaluation was performed and plaintiff was told to go to the emergency room, but he declined to do so. Ms. Watson wrote in the 23 February 2004 office note: "pt. non-compliant."

Plaintiff alleged in his complaint that on 25 February 2004, he returned to South Park to have his blood drawn, but was told that he had been fasting too long. He returned the following day, 26 February 2004, and his blood was drawn at that time. Defendants stated in their answer that plaintiff had, in fact, come to South Park on 25 February 2004, but that he had not followed the instructions given to him, therefore his blood could not be drawn. Subsequent evidence revealed that South Park was closed on 25 February 2004 and the trial court allowed defendants to amend their answer during trial to reflect that fact.

On 26 June 2007, plaintiff filed a complaint against·defendants alleging that his "atrial fibrillation, heart attack, and stroke . . . was a direct and, proximate result of the medical negligence of the Defendants . . ." Plaintiff claimed that his medical history of morbid obesity, high blood pressure, diabetes, and high cholesterol, coupled with his high pulse rate and complaints of weakness and chest pain "should have placed Defendants and their employees on notice that Plaintiff was at risk for death or other catastrophic event . . . ." The jury in this case found that the defendants were not liable for plaintiff's injuries. The trial court entered judgment in favor of defendants, denied plaintiff's motion for a new trial, and subsequently granted defendants' motion for costs. Plaintiff timely appealed to this Court.

Discussion

I.

[1] First, plaintiff argues that the trial court erred in allowing defendants to amend their answer during trial. We disagree.

"In situations where a party has no right to amend because of the time limitations in Rule 15(a) [of the North Carolina Rules of Civil Procedure], an amendment may nevertheless be made by leave of court or by written consent of the adverse party." *Isenhour v.*

*Universal Underwriters Ins. Co.*, 345 N.C. 151, 154, 478 S.E.2d 197, 199 (1996); N.C. Gen. Stat. § 1A-1, Rule 15(a) (2009). "[L]eave shall be freely given when justice so requires." N.C. Gen. Stat. § 1A-1, Rule 15(a). "A motion to amend is addressed to the [sound] discretion of the trial court. Its decision will not be disturbed on appeal absent a showing of abuse of discretion." *Henry v. Deen*, 310 N.C. 75, 82, 310 S.E.2d 326, 331 (1984). "An abuse of discretion occurs when the trial court's ruling 'is so arbitrary that it could not have been the result of a reasoned decision.' " *Chicora Country Club, Inc. v. Town of Erwin*, 128 N.C. App. 101, 109, 493 S.E.2d 797, 802 (1997) (quoting White v. White, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985)), *disc. review denied*, 347 N.C. 670, 500 S.E.2d 84 (1998).

"Although the spirit of the North Carolina Rules of Civil Procedure is to permit parties to proceed on the merits without the strict and technical pleadings rules of the past, the rules still provide some protection for parties who may be prejudiced by liberal amendment." *Isenhour*, 345 N.C. at 154-55, 478 S.E.2d at 199. "Among proper reasons for denying a motion to amend are undue delay by the moving party and unfair prejudice to the nonmoving party." *News & Observer Publishing Co. v. Poole*, 330 N.C. 465, 485, 412 S.E.2d 7, 19 (1992). "The objecting party has the burden of satisfying the trial court that he would be prejudiced by the granting or denial of a motion to amend." *Watson v. Watson*, 49 N.C. App. 58, 60, 270 S.E.2d 542, 544 (1980).

In the present case, defendants' answer stated that plaintiff came to South Park on Wednesday 25 February 2004 to have his blood drawn, but that plaintiff "had not followed simple instructions which were necessary to ascertain accurate lab results . . . ." Plaintiff was, therefore, told to come back the following day. However, during discovery, Mrs. Rudisill testified in her deposition that South Park was closed on Wednesdays and open on Saturdays. Plaintiff's medical records show that a notation was made that plaintiff's wife called on "27 February 2004" to report that plaintiff was being taken to the emergency room; however, it is undisputed that plaintiff went to the hospital on Saturday, 28 February 2004. Defendants contended that the date on the report was a clerical error and that the call was, in fact, received on Saturday, 28 February 2004. Mrs. Rudisill testified that she was working that day.

At trial, plaintiff sought to read to the jury that portion of defendants' answer which stated that South Park was open on Wednesday 25

February 2004. Plaintiff claimed that this statement in the answer constituted a judicial admission and requested a jury instruction to the effect that judicial admissions are "binding in every sense, preventing the party who agreed to the stipulation from introducing evidence to dispute it and relieving the other party of a necessity of producing evidence to establish the admitted fact." Defendants argued before the trial court that the content of their answer was not a judicial admission and evidence could be offered to explain why the answer originally stated that South Park was open on 25 February 2004. Defendants then made an oral motion to amend their answer pursuant to Rule 15(a). After hearing extensive arguments from counsel, the trial court stated:

> [T]he plaintiff has been aware of the defendants' contention for quite some time that the doctor's office was in fact open on Saturday and closed on Wednesday, which is inconsistent with the admission. Rule 15 does allow for amendments to be liberally and freely given when justice so requires.

At this point I believe that the motion to amend should be granted and that the defendant should be allowed to amend their answer. And it appears that there is no material prejudice to the plaintiff because they were aware of the defendants' contention for quite some time, notwithstanding the admission in their answer.

Defendants amended their answer to state: "It is denied that Plaintiff presented to the employees of the Defendants at the offices of South Park Medical Clinic, P.A. on February 25, 2004, as the office was closed on that day." The trial court did, however, allow plaintiff to read to the jury the original statement in the answer and instructed the jury that the statement constituted an "evidentiary admission [that] is not conclusive but may be controverted or explained . . . ."

First, plaintiff contends that there was undue delay on the part of defendants in requesting the amendment during trial. Aside from defendants' original answer, all of their evidence produced during discovery indicated that South Park was open on Saturday and closed on Wednesday. Defendants did not seek to amend their answer until plaintiff attempted to use their admission as binding at trial despite defendants' consistent position that the office was open on Saturday when Mrs. Davis called. We see no undue delay in the amendment simply because the amendment took place during trial. *See generally Watson v. White*, 309 N.C. 498, 510, 308 S.E.2d 268, 275 (1983) (stat-

ing that the trial court acted in its discretion when it allowed defendants to amend their answer after closing arguments at trial which "had the effect of removing the admitted allegations from the class of judicial admissions into the class of evidential admissions"); *Warren v. General Motors Corp.*, 142 N.C. App. 316, 319, 542 S.E.2d 317, 318-19 (2002) (finding no abuse of discretion where the trial court allowed the defendants to amend their respective answers on the first day of trial).

Plaintiff further contends that he was prejudiced by the trial court's decision to allow defendants to amend their answer. Plaintiff states in his brief that his

> trial strategy . . . was that if it is an established fact that [plaintiff] presented and was turned away on Wednesday, 25 February, then the South Park Medical Clinic office was closed on Saturday 28 February; therefore the "Saturday" chart entries . . . of Gail Watson and Kathy Rudisill were false as was their testimony about the Saturday phone call from Plaintiff and their making of the chart entries on Saturday 28 February.

All of the medical experts in this case testified that the standard of care was met if defendants performed à cardiac evaluation and instructed plaintiff to seek emergency room care. Plaintiff claimed that this was not done and defendants claimed that it was. Consequently, the primary issue was one of credibility and plaintiff sought to impeach defendants' credibility by establishing that South Park was not open on Saturday, and, therefore, the medical records supposedly entered on Saturday were falsified. Again, aside from defendants' original answer, the evidence indicated that South Park was indeed open on Saturday and closed on Wednesday. There was no evidence that medical records were falsified. We agree with the trial court that plaintiff cannot show prejudice given the evidence presented during discovery and then at trial that South Park was open on Saturday and closed on Wednesday. Plaintiffs were allowed to present to the jury the inconsistency in defendants' original answer. While plaintiff's trial strategy may have been hampered by the amendment, we see no abuse of discretion in the trial court's decision to allow defendants to amend their answer.

II.

[2] Next, plaintiff argues that the trial court erred in granting defendants' motion *in limine* precluding the admission of Dr. Rudisill's North Carolina State Medical Board ("Medical Board") public file. A

trial court's order granting or denying a motion *in limine* is reviewed for an abuse of discretion. *Heatherly v. Industrial Health Council*, 130 N.C. App. 616, 619, 504 S.E.2d 102, 105 (1998).

Defendants in this case filed a motion *in limine* on 4 May 2009 asking the trial court to exclude any reference to Dr. Rudisill's Medical Board public file. The file shows that in 1985, the Medical Board determined that Dr. Rudisill prescribed patients controlled substances when there was no medical need to do so. In 1992, the Medical Board found that Dr. Rudisill had falsified patient records for the purpose of improperly prescribing controlled substances in exchange for cash payments. In 1997, the Medical Board determined that Dr. Rudisill had been selling drug samples to a pharmacist from 1992 to 1995. Defendants argued in their motion:

It is anticipated Plaintiff will attempt to use, and introduce evidence of, Dr. Rudisill, Jr.'s prior 1985 and 1992 Board findings at trial in order to establish that Dr. Rudisill tampered with, altered, fabricated or falsified the medical record of Mr. Davis in 2004. In other words, it is anticipated that they intend to use prior "crimes, wrongs or acts" to show that Defendants acting "in conformity therewith" some 19 and 12 years later. There is absolutely no evidence whatsoever in this case that the Defendants tampered with or falsified entries in Mr. Davis' medical chart. Regardless, evidence of prior wrongs to show conformity therewith in the present case is inadmissible under Evidence Rule 404.

Defendants further claimed that allowing plaintiff to introduce the public file would substantially prejudice defendants. After hearing arguments from counsel, the trial court stated:

I think that because of the time frame of the prior bad acts contained within the North Carolina State Medical Board public file, it's so far removed and so remote that if I were to allow this evidence in, that the danger of unfair prejudice would greatly or substantially outweigh any probative value. I think that once the jury heard it, heard these prior bad acts which happened many years ago prior to the plaintiff ever receiving care there, that they would focus on that and give it undue attention and that any verdict that they reached conceivably would be on an improper basis and not based on the evidence brought out in this case with respect to the current allegations.

So because of these reasons, the Court with respect to the defendants' motion to preclude the use or admission into evidence of the North Carolina State Medical Board public file, the motion in limine is granted.

In other words, the trial court held that the evidence was unduly prejudicial and could potentially mislead the jury pursuant to N.C. Gen. Stat. § 8C-1, Rule 403 (2009), which states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. . . ."

In his brief, plaintiff argues multiple reasons why this evidence was probative, including to show a common plan or scheme to falsify medical records and to reveal the bias of Ms. Watson who testified on behalf of Dr. Rudisill before the Medical Board. Assuming that this evidence was probative for the reasons argued by plaintiff, we limit our review to determining whether the evidence was unduly prejudicial under Rule 403, as the trial court determined. *Gray v. Allen*, 197 N.C. App. 349, 356, 677 S.E.2d 862, 867 (2009) ("Even taking plaintiff's argument as true—and thus that the evidence was admissible under Rule 404(b)—it is still within the trial court's discretion to make a ruling on admissibility based on the prejudicial effect of the evidence relative to its probative value."). We agree with the trial court's reasoning and find no abuse of discretion in the granting of defendants' motion *in limine*.

Defendants in this case claimed that they followed the standard of care by performing a cardiac evaluation and urged plaintiff to go to the hospital. Plaintiff claimed that defendants did not urge him to go to the hospital; rather, they told him to go home and come back for blood tests. Consequently, this case hinged almost entirely on witness credibility. The only documented evidence concerning defendants' actions was Ms. Watson's note, "pt. noncompliant," which she testified was in reference to plaintiff's refusal to go to the hospital. Plaintiff has admitted in his brief that part of his trial strategy was to cast doubt on the authenticity of this note. While the Medical Board found in 1992, 12 years before plaintiff's stroke, that Dr. Rudisill falsified medical records, there was no evidence in the present case that would indicate that the 23 February 2004 medical record notation was falsified by Dr. Rudisill, Ms. Watson, or any South Park staff member. Evidence that Dr. Rudisill falsified medical records in the past, for reasons completely unrelated to the issue in the present

case, could mislead the jury into giving undue weight to plaintiff's allegations and result in a verdict based on an improper basis, as the trial court determined. *See Holiday v. Cutchin*, 311 N.C. 277, 279, 316 S.E.2d 55, 57 (1984) (Generally, "[t]he character of a defendant physician in a medical malpractice action is irrelevant to the ultimate issue of whether the physician acted negligently. Such evidence tempts the jury to base its decision on emotion and to reward good people or punish bad people, rather than to render a verdict based upon the facts before them. The use of character evidence by a party to a civil action 'might move the jury to follow the principles of poetic justice rather than rules of law.' " (quoting *Creech v. Creech*, 222 N.C. 656, 664, 24 S.E.2d 642, 648 (1943))).

### III.

[3] Plaintiff argues that the trial court erred in denying his motion for a new trial filed pursuant to N.C. Gen. Stat. § 1A-1, Rule 59 (2009) and subsequently awarding costs to defendant.[1] The standard of review as to both issues is abuse of discretion. *Kor Xiong v. Marks*, 193 N.C. App. 644, 654, 668 S.E.2d 594, 601 (2008); *Vaden v. Dombrowski*, 187 N.C. App. 433, 437, 653 S.E.2d 543, 545-46 (2007). Since we have found no error in the trial court's decision to allow defendants to amend their answer or in the trial court's granting of defendants' motion *in limine*, we hold that the trial court did not err in denying plaintiff's motion for a new trial or in granting costs to defendants pursuant to N.C. Gen. Stat. § 6-20 (2009) and N.C. Gen. Stat. § 7A-305(d) (2009).

Affirmed.

Judges CALABRIA and ELMORE concur.

---

1. Plaintiff appealed from entry of these orders.