CARLTON, J.,
 

 for the Court.
 

 ¶ 1. This is an appeal from the Circuit Court of Lee County wherein Green-Save, Inc., and Walter J. Fleishhacker (collectively “Green-Save”) filed suit against Tommy Morgan, seeking damages for alleged fraud in the sale of 2.1 acres of land. Specifically, Green-Save claimed that Morgan concealed that a portion of the property was situated in a flood plain and misrepresented that natural gas would be available to the property. At the conclusion of trial, the jury returned a verdict in favor of Green-Save in the amount of $325,000. The trial court denied Morgan’s post-trial motions.
 

 ¶ 2. Aggrieved, Morgan appeals and argues that the trial court erred in denying his motions for judgment notwithstanding the verdict, a new trial, and remittitur. Green-Save cross-appeals and claims that the trial court erred in failing to award
 
 *651
 
 attorney’s fees and refusing to submit the issue of punitive damages to the jury.
 

 ¶ 3. We find that Green-Save failed to establish fraud and that Morgan was entitled to judgment notwithstanding the verdict. Therefore, we reverse and render judgment in favor of Morgan and do not reach the other assignments of error.
 

 FACTS
 

 ¶ 4. In 1998, Morgan, a real estate developer, purchased approximately 319 acres of undeveloped land in Lee County, Mississippi. Several years later, Morgan began to develop the property by dividing it into two planned development areas: “The Summit,” a residential subdivision consisting of approximately 140 acres, and “South Ridge Commons,” a commercial development consisting of the remaining acreage.
 

 ¶ 5. In the spring of 2001, Fleishhacker, the owner of Green-Save, Inc.,
 
 [1]
 
 contacted Morgan and asked him if he had any property available on which Green-Save could construct a new manufacturing facility. Morgan met with Fleishhacker at the South Ridge Commons development and showed him the 2.14 acre lot, which Green-Save later purchased. At the time, South Ridge Commons was in the early stages of development; Morgan had sold only one other lot, which was located adjacent to lot he showed Fleishhacker. Morgan explained to Fleishhacker that light industrial development was planned to the east of the lot and commercial and retail development was planned to the west of the lot. No discussion was had regarding whether the property was situated in a flood plain. On this occasion, Morgan and Fleishhacker agreed on a price of $32,100 and “shook hands and had a deal.” Several days later, Morgan met with Fleishhacker and Les Ellis, the manager of Green-Save, at the lot. According to Fleishhacker, he told Morgan that Green-Save planned to utilize natural gas instead of electricity at the new manufacturing facility, and Morgan stated that “all utilities” would be available to the property. The parties ultimately closed on the property in April 2002. Green-Save purchased the property without financing.
 

 ¶ 6. In late summer of 2002, Green-Save moved forward with plans to construct the manufacturing facility. Green-Save hired Gerald Warfield, owner of Southland Construction, to build the facility. The site was graded and construction began without any efforts by either Warfield or Green-Save to ascertain whether the property was in a flood plain. In November 2002, as construction neared completion, Fleishhacker first sought financing. This required a flood certificate, the preparation of which revealed that a portion of the property was located in a flood plain. The facility as constructed was situated one inch below the requisite elevation necessary to avoid the purchase of flood insurance — one foot above the designated flood plain elevation. Consequently, financing could not be obtained without the purchase of flood insurance at an annual cost of approximately $2,500.
 

 ¶ 7. Nevertheless, the new manufacturing facility opened and began operating in January 2003. Around this time, Green-Save contacted Mississippi Valley Gas (MVG), seeking to have a natural gas line installed. However, MVG refused because only two lots had been developed in South Ridge Commons, a fact that, in MVG’s estimation, rendered the running of a gas line to Green-Save’s facility economically infeasible. Green-Save continued to operate the manufacturing facility on electricity, which proved to be less expensive than natural gas.
 

 
 *652
 
 ¶ 8. In April 2004, Green-Save filed suit, alleging that Morgan fraudulently concealed that the property was in a flood plain and fraudulently misrepresented that natural gas would be available to the property. The case was submitted to the jury on these two issues. After deliberation, the jury returned a general verdict in favor of Green-Save and awarded damages in the amount of $325,000. Morgan’s motions for judgment notwithstanding the verdict, new trial, and remittitur were denied. Morgan now appeals to this Court.
 

 DISCUSSION
 

 I. Whether the trial court erred in denying Morgan’s motion for judgment notwithstanding the verdict.
 

 ¶ 9. We review the denial of a motion for judgment notwithstanding the verdict (JNOV) de novo.
 
 Wilson v. Gen. Motors Acceptance Corp.,
 
 883 So.2d 56, 64(24) (Miss.2004). A motion for JNOV tests the legal sufficiency of the evidence.
 
 White v. Yellow Freight Sys. Inc.,
 
 905 So.2d 506, 510(6) (Miss.2004). On appeal, we “consider the evidence in the light most favorable to the non-moving party, giving that party the benefit of all favorable inferences that reasonably may be drawn therefrom.”
 
 Wilson,
 
 883 So.2d at 63(21). We will affirm the denial of a motion for JNOV where “the evidence is of such quality that reasonable and fairminded jurors in the exercise of fair and impartial judgment might reach different conclusions.”
 
 Poole v. Avara,
 
 908 So.2d 716, 726(24) (Miss.2005). However, we must reverse and render “[i]f the facts so considered point so overwhelmingly in favor of the appellant that reasonable men could not have arrived at a contrary verdict.”
 
 Wilson,
 
 883 So.2d at 63(22) (quoting
 
 Corley v. Evans,
 
 835 So.2d 30, 37(19) (Miss.2003)).
 

 ¶ 10. Generally, in order to establish fraud under Mississippi law, a plaintiff must show the following by clear and convincing evidence:
 

 (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker’s knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated, (6) the hearer’s ignorance of its falsity, (7) his reliance on its truth, (8) his right to rely thereon, and (9) his consequent and proximate injury.
 

 Mabus v. St. James Episcopal Church,
 
 884 So.2d 747, 762(32) (Miss.2004) (quoting
 
 Franklin v. Lovitt Equip. Co.,
 
 420 So.2d 1370, 1373 (Miss.1982)). The instant case was submitted to the jury on two specific claims: (1) whether Morgan fraudulently concealed that a portion of the property was in a flood plain and (2) whether Morgan fraudulently misrepresented that natural gas would be available to the property. We will consider each separately.
 

 1. Whether Morgan fraudulently concealed that a portion of the property was in a flood plain.
 

 ¶ 11. Morgan argues that Green-Save failed to prove that he committed an affirmative act to conceal that a portion of the property was located in a flood plain. Green-Save contends that Morgan committed affirmative acts by representing that the property was part of a commercial subdivision and that light industrial development was planned to the east of the lot and commercial and retail development was planned to the west of the lot. Green-Save also argues that a fiduciary relationship existed between it and Morgan; thus, Morgan had an affirmative duty to disclose that the property was situated in a flood plain.
 

 A. Affirmative Act of Concealment.
 

 ¶ 12. In the instant case, it is undisputed that Morgan made no repre
 
 *653
 
 sentation regarding whether the property was in a flood plain. As Green-Save correctly points out, omission or concealment of a material fact can constitute fraud.
 
 Rankin v. Brokman,
 
 502 So.2d 644, 646 (Miss.1987) (quoting
 
 Davidson v. Rogers,
 
 431 So.2d 483, 485 (Miss.1983)). However, in order to create liability for nondisclosure, the defendant’s “silence must relate to a material fact or matter known to the party and as to which it is his legal duty to communicate to the other contracting party.”
 
 Mabus,
 
 884 So.2d at 762-63(32) (citing
 
 Guastella v. Wardell,
 
 198 So.2d 227, 230 (Miss.1967)). To prove fraudulent concealment, the plaintiff must show that the defendant “took some action, affirmative in nature, which was designed or intended to prevent and which did prevent, the discovery of the facts giving rise to the fraud claim.”
 
 Davidson,
 
 431 So.2d at 485. Where the parties do not stand in a confidential or fiduciary relationship with one another, an affirmative act of concealment is necessary.
 
 Van Zandt v. Van Zandt,
 
 227 Miss. 528, 538-39, 86 So.2d 466, 470 (1956);
 
 accord Mabus,
 
 884 So.2d at 762-63;
 
 Ezell v. Robbins,
 
 533 So.2d 457, 461 (Miss.1988);
 
 Rankin,
 
 502 So.2d at 646;
 
 Davidson,
 
 431 So.2d at 485.
 

 ¶ 13. In the instant case, we find that Green-Save failed to present evidence that Morgan affirmatively concealed that the property was situated in a flood plain. Morgan’s statements regarding the property’s commercial character and development plans in no way touch on the point of whether the property is in a flood zone. These statements cannot be considered an act designed to prevent Green-Save from discovering that the property was in a flood plain.
 

 B. Fiduciary Relationship.
 

 ¶ 14. Green-Save argues that a fiduciary relationship was established because Morgan was “more than a mere seller, but was the developer of a purported commercial subdivision.” To support this contention, Green-Save again points to Morgan’s statements that future industrial, commercial, and retail development was planned in South Ridge Commons. Green-Save further contends that the restrictive covenants of South Ridge Commons created a common interest in the property and vested in Morgan a retained degree of control over the property.
 

 ¶ 15. A fiduciary relationship does not ordinarily arise in an arm’s length contractual agreement.
 
 See, e.g., Robley v. Blue Cross/Blue Shield of Mississippi,
 
 935 So.2d 990, 995-96 (14-15) (Miss.2006) (finding no fiduciary relationship between insurer and insured);
 
 AmSouth Bank v. Gupta,
 
 838 So.2d 205, 216-17 (31-38) (Miss.2002) (finding no fiduciary relationship between bank and customer in commercial loan transaction);
 
 Burgess v. Bankplus,
 
 830 So.2d 1223, 1228(8) (Miss.2002) (finding no fiduciary relationship be tween mortgagee and mortgagor). However, a fiduciary relationship may be found where:
 

 (1) the activities of the parties go beyond their operating on their own behalf, and the activities are for the benefit of both; (2) where the parties have a common interest and profit from the activities of the other; (3) where the parties repose trust in one another; and (4) where one party has dominion or control over the other.
 

 Robley,
 
 935 So.2d at 995(12) (quoting
 
 Univ. Nursing Assocs., PLLC v. Phillips,
 
 842 So.2d 1270, 1274 (Miss.2003)).
 
 [2]
 
 The
 
 *654
 
 party seeking to establish the existence of a fiduciary relationship bears the burden of proving such a relationship by clear and
 
 convincing
 
 evidence.
 
 Gupta,
 
 838 So.2d at 216(32).
 

 ¶ 16. In the instant case, we find that Green-Save failed to prove that a fiduciary relationship existed between it and Morgan. The record establishes that the sale of the subject property was nothing more than an arm’s length business transaction between two parties, each looking out for their own interests. While Green-Save may have trusted Morgan as a reputable real estate developer, this trust does not create a fiduciary relationship.
 
 See Robley,
 
 935 So.2d at 995-96(14) (“Although one does not typically enter into a contract with another person unless he or she has a degree of trust or confidence in that person, without more, such a transaction, amounts to merely a business relationship and not a fiduciary relationship.”) (citing
 
 Gupta,
 
 838 So.2d at 216(33)).
 

 ¶ 17. Further, we find that any common interest created by virtue of the restrictive covenants was ancillary to the underlying sale of the property. Therefore, we reject Green-Save’s argument that the restrictive covenants created a common interest sufficient to establish a fiduciary relationship.
 
 See Memphis Hardwood Flooring Co. v. Daniel,
 
 771 So.2d 924, 930(21) (Miss.2000) (“A fiduciary relationship may arise between parties to a contract where the parties share a mutual interest
 
 in obtaining the results called for in the contract.”
 
 (Emphasis added)).
 

 ¶ 18. Green-Save failed to prove either: (1) that Morgan committed an affirmative act to conceal that the property was in a flood plain or (2) that Morgan had a duty to disclose this information due to a fiduciary relationship. Thus, Green-Save failed to establish that Morgan fraudulently concealed that a portion of the property was situated in a flood plain. Accordingly, we hold that the trial judge erred in denying Morgan’s motion for JNOV as to this issue.
 

 2. Whether Morgan fraudulently misrepresented that natural gas would be available to the property.
 

 ¶ 19. Morgan correctly argues that a claim of fraudulent concealment cannot be based on statements concerning future acts.
 
 Spragins v. Sunburst Bank,
 
 605 So.2d 777, 781 (Miss.1992) (“Fraudulent misrepresentations must be related to past or presently existing facts.”). A promise of future conduct does not amount to fraud unless the promise was “made with the present undisclosed intention of not performing it.”
 
 Bank of Shaw v. Posey,
 
 573 So.2d 1355, 1360 (Miss.1990).
 

 ¶ 20. At trial, Green-Save alleged that Morgan represented that “all utilities” would be available to the property. At the time Green-Save filed suit, a natural gas line had not been run to the property because MVG decided that such action would be unprofitable; this decision was based largely on the fact that South Ridge Commons had only two occupants. From the record, it appears that development in South Ridge Commons was hindered by delay in the construction of a planned extension of Highway 6, which would have run alongside South Ridge Commons, thereby increasing the development’s desirability. To this end, Green-Save appears to contend that Morgan intended not to promote development in South Ridge
 
 *655
 
 Commons until the extension of Highway 6 was completed, ultimately resulting in MVG’s refusal to run a natural gas line to the property.
 

 ¶ 21. Morgan’s statement that “all utilities” would be available was not a representation of past or presently existing facts. Rather, it was a representation of a future state of facts, which, in order to come to fruition, depended on a number of factors largely outside of Morgan’s predictability or control. We find the circumstances too attenuated to establish that Morgan possessed a present intent not to perform when he made the statements. Moreover, Morgan’s statement that all utilities would be
 
 available
 
 is arguably not a promise to perform. Morgan did not promise that he would
 
 provide
 
 natural gas. It would be unreasonable for Green-Save to assume that Morgan himself would run a natural gas line to their facility when such action is clearly within MVG’s discretion.
 

 ¶ 22. Green-Save failed to establish its claim that Morgan fraudulently misrepresented that natural gas would be available to the property. Therefore, we find that the trial court erred in denying Morgan’s motion for JNOV on this issue.
 

 CONCLUSION
 

 ¶23. Having determined that Green-Save failed to establish its claim of fraud against Morgan, we conclude that the trial court erred in denying Morgan’s motion for JNOV. Accordingly, we reverse and render judgment in favor of Morgan.
 

 ¶ 24. THE JUDGMENT OF THE CIRCUIT COURT OF LEE COUNTY IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEES.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.
 

 [1]
 

 . Green-Save, Inc., is a manufacturer of tools used to repair golf greens.
 

 [2]
 

 . The Mississippi Supreme Court has also stated similarly that the following are considered in determining whether a fiduciary relationship exists in a commercial transaction:
 
 *654
 
 "whether (1) the parties have shared goals in each other’s commercial activities, (2) one of the parties places justifiable confidence or trust in the other party’s fidelity, and (3) the trusted party exercises effective control over the other party.”
 
 Gupta,
 
 838 So.2d at 216(32).