# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CA-00463-COA

ELRAY JONES, INDIVIDUALLY, AND ON BEHALF OF ALL THE HEIRS AT LAW AND WRONGFUL DEATH BENEFICIARIES OF SHIRLEY NEBRASKA JONES, DECEASED

APPELLANT

v.

MEA, INC.; MEA MEDICAL CLINIC OF RIDGELAND, MISSISSIPPI; ST. DOMINIC - JACKSON MEMORIAL HOSPITAL; ITS AGENT-CORPORATION AND/OR PARENT COMPANY(IES); JACKSON HEART CLINIC, P.A.; ITS AGENT-CORPORATION AND/OR PARENT COMPANY; LAKELAND DRIVE

APPELLEES

| | |
|---|---|
| DATE OF JUDGMENT: | 08/16/2012 |
| TRIAL JUDGE: | HON. WILLIAM A. GOWAN JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | DAVEY L. TUCKER |
| | TRACEY TUCKER THRASH |
| ATTORNEYS FOR APPELLEES: | MILDRED M. MORRIS |
| | JOHN ERNEST WADE JR. |
| | R. MARK HODGES |
| | KIMBERLY NELSON HOWLAND |
| | JOHN BURLEY HOWELL III |
| | LANE WILLIAMSON STAINES |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| TRIAL COURT DISPOSITION: | DISMISSED WRONGFUL-DEATH CLAIM ON SUMMARY JUDGMENT |
| DISPOSITION: | AFFIRMED - 09/09/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., MAXWELL AND JAMES, JJ.**

**MAXWELL, J., FOR THE COURT:**

¶1.     In medical-malpractice cases, expert testimony is critical. An expert is needed not only to establish the medical professional deviated from the standard of care but also to prove this deviation caused the patient's injury.[1] So in this case, when the wrongful-death beneficiaries of Shirley Nebraska Jones sought to establish a medical-malpractice claim *without* a medical expert, the result was inevitable—the judge granted summary judgment in favor of the medical clinics and hospital that had treated Jones.

¶2.     On appeal, the beneficiaries claim no expert was needed. As they see it, the malpractice was easily detectable under the "layman's exception." But this narrow exception is only available "where a layman can observe and understand the negligence as a matter of common sense and practical experience"—like when a surgeon leaves an object in the patient during surgery.[2] This exception has never been applied to allegations, like these, that the treating physicians made bad judgment calls.[3]

¶3.     Eyeing their argument a bit closer, while they cite the layman's exception, what they really want is an exception to the requirement that one must be *qualified* to testify as a medical expert. The "lay" witness they insist could establish their claim was Shirley's daughter, Myra Jones—a self-proclaimed "medical expert" who, according to their brief,

---

[1] *Hubbard v. Wansley*, 954 So. 2d 951, 956-57 (¶12) (Miss. 2007).

[2] *Coleman v. Rice*, 706 So. 2d 696, 698-99 (¶¶10-11) (Miss. 1997) (quoting *Erby v. N. Miss. Med. Ctr.*, 654 So. 2d 495, 500 (Miss. 1995)).

[3] *See Smith ex rel. Smith v. Gilmore Mem'l Hosp., Inc.*, 952 So. 2d 177, 181 (¶11) (Miss. 2007).

"possesse[d] more than an ordinary knowledge of medical care as a certified Doctor of Naturopathic Medicine." Myra intended to offer her *opinion* that Shirley's doctors committed malpractice—an opinion informed by her experience with alternative medicine. But under Mississippi law, Myra could not testify against licensed physicians because she was not qualified as an expert on the standard of care of *medical* doctors. Thus, the trial judge correctly rejected her opinion as "fatally deficient" to establish a medical-malpractice claim.

¶4. Because the beneficiaries presented no viable evidence of medical malpractice, we affirm the grant of summary judgment.

### Background Facts and Procedural History

### I. Fatal Heart Problems

¶5. Eighty-one-year-old Shirley Nebraska Jones suffered from high blood pressure. She was being treated at the MEA Medical Clinic of Ridgeland, Mississippi (MEA). Her doctor first prescribed physical therapy. But when her blood pressure became life-threatening, he prescribed medication.

¶6. Shirley had an adverse response to the medication and was sent to St. Dominic-Jackson Memorial Hospital (St. Dominic). While in the hospital, another doctor who evaluated her wrote in his chart that she may need a pacemaker and may also need to undergo a stress test "at some point in time."

¶7. Shirley was discharged from St. Dominic the next day. She did not return to the

3

doctor until six weeks later, when she had a heart attack. She was sent to another hospital, where doctors placed a stent in her heart. After her discharge, her family called the Jackson Heart Clinic because Shirley was having trouble breathing. Her family took her into the clinic four days later. According to the family members, they questioned one of Shirley's medications but no changes to her prescriptions were made that day.

¶8.    The next day, the family once again called the Jackson Heart Clinic. The clinic sent Shirley back to St. Dominic. The doctors at St. Dominic determined her heart was failing. They discussed inserting a pacemaker. But the next day, before anything further could be done, Shirley had another heart attack and died.

## II.    Wrongful-Death Suit

¶9.    Shirley's husband, Elray Jones—on behalf of Shirley's heirs and wrongful-death beneficiaries—sued MEA, St. Dominic, and the Jackson Heart Clinic. He asserted the medical negligence of the doctors working for these entities had caused Shirley's death.

¶10.    Instead of employing an attorney, Elray relied on his daughter and fellow beneficiary, Myra, to draft the pro se complaint. Myra is a self-described "certified doctor of naturopathic medicine," though she has not revealed what entity has certified her. Only a dozen states license doctors of naturopathic medicine.[4] And Mississippi is not one of them.

---

[4] As one journal article has described:

> According to the National College of Naturopathic Medicine, naturopathy is based on the belief that the body can heal itself of ailments and diseases through the stimulation, enhancement, and support of the inherent healing power of the body. Naturopathic practice involves identifying and removing

4

¶11.    According to Myra, after her mother's death, she poured over her mother's medical records. Based on her own interactions with her mother's doctors and her own research, she was convinced malpractice occurred. She also felt she and her father did not need to retain a medical expert to prove their case.

¶12.    Myra clung to this conviction that no expert was necessary—even when the court told her otherwise. Because no medical experts had opined they were negligent, all three defendants filed motions for summary judgment. Myra appeared at the summary-judgment hearing armed only with her own affidavit. In this affidavit, Myra first described her naturopathic/alternative medical "practice," followed by vague references to her mother's medical condition six weeks before she died. She dedicated the bulk of her affidavit to accusations that her First Amendment rights had been violated during her deposition by the attorney for the Jackson Heart Clinic.

¶13.    Myra told the judge her testimony could support the malpractice claim because she

---

obstacles that inhibit recovery; emphasizing treatment for the causes of disease rather than treatment for the symptoms; formulating a health solution that incorporates the patient's spiritual, environmental, and physical lifestyle influences; empowering the patient to take responsibility for his or her own health; and ultimately, promoting lifestyle habits that avoid harm to the patient. Naturopathic medicine specifically involves the application of plant substances; minor surgeries; tissue, bone, and muscle manipulation; electrical therapy; and other related treatments. Only four colleges in the United States offer naturopathic training, few states license the naturopathic discipline, and there is no national regulatory board.

Robert T. Vlasis, *The Doctor Is Out, or Unconventional Methods for Healing: Resolving the Standard of Care for an Alternative Medicine Practitioner*, 43 Hous. L. Rev. 495, 501-02 (2006) (internal quotations and citations omitted).

was a "medical expert." But because Myra admittedly was not licensed to practice medicine and certainly not qualified to provide expert testimony on the standard of care for the various medical specialities represented among the defendants, the trial judge ruled Myra's affidavit was "fatally deficient." He then dismissed the medical-malpractice claim, as totally unsupported by expert testimony. *See* M.R.C.P. 56(e).

### III. *Post-Judgment Motion*

¶14. Only after their claim was dismissed on summary judgment did the Joneses hire an attorney. Within ten days of the entry of summary judgment, counsel sought a panoply of post-judgment remedies in "Plaintiff's Motion to Continue, to Reconsider and Set Aside Order of Dismissal, for Stay of Proceedings to Alter or Amend the Order of Dismissal, to Extend the Time to Perfect the Appeal, and for Emergency Relief," which cited Mississippi Rules of Civil Procedure 52(b), 56(f), 59(e), 60(b), and 62(b). While awaiting the hearing on this motion,[5] counsel filed a second "Motion for Extension of Time to Employ Expert Witness." In this motion, counsel explained that Myra finally "appreciate[d] that she misunderstood the law" about the layman's exception and—now that she had grasped how vital expert testimony was to her claim—needed more time to find an expert.

¶15. At the hearing, counsel begged forgiveness for Myra's misunderstanding of the rules and made promises of a forthcoming expert affidavit, if only the judge would give them more

_____

[5] On appeal, the Joneses' counsel criticizes the trial judge for summarily dismissing this motion. But the record clearly shows the trial judge only denied the motion after conducting a hearing in which the judge respectfully considered each of counsel's arguments.

time.  The trial judge denied the request to reconsider his prior ruling.  He found the Joneses had been given ample time to prosecute their claim and defend the summary-judgment motions.  And despite four months passing while their motion to reconsider was pending, they still were no step closer to locating an expert to support their allegations.

¶16.   The Joneses timely appealed.  We review the grant of the motion for summary judgment de novo.   *Bradley v. Kelley Bros. Contractors, Inc.*, 117 So. 3d 331, 336 (¶21) (Miss. Ct. App. 2013).   And we review the denial of the motion to reconsider for abuse of discretion. *Fowler v. White*, 85 So. 3d 287, 292 (¶18) (Miss. 2012).

**Discussion**

### I.       Grant of Summary Judgment

¶17.   Our de novo review leads to the same conclusion as the trial judge—no medical expert means no triable medical-malpractice claim.

¶18.   Faced with motions for summary judgment, the Joneses could not merely rest on the allegations in their complaint. *See* M.R.C.P. 56(e); *Massey v. Tingle*, 867 So. 2d 235, 238 (¶6) (Miss. 2004). Instead, they had to meet those motions with evidence sufficient to establish factual disputes on each element of their medical-malpractice claim, for which they would have borne the burden of proof at trial.[6]  *See Karpinsky v. Am. Nat'l Ins.*, 109 So. 3d

---

[6]  The medical-malpractice elements the Joneses had to establish were:

(1)     that Shirley was in a doctor-patient relationship with physicians for each entity sued,
(2)     the standard of care applicable to each treating physician,
(3)     each physician's failure to conform to that standard of care,

7

84, 89 (¶11) (Miss. 2013). And the Mississippi Supreme Court has repeatedly said that with a medical-malpractice claim the plaintiff cannot meet this burden without medical-expert testimony. *E.g., Cleveland v. Hamil*, 119 So. 3d 1020, 1023 (¶11) (Miss. 2013); *Univ. of Miss. Med. Ctr. v. Lanier*, 97 So. 3d 1197, 1201 (¶15) (Miss. 2012); *Estate ex rel. Campbell v. Calhoun Health Servs.*, 66 So. 3d 129, 136 (¶32) (Miss. 2011); *Worthy v. McNair*, 37 So. 3d 609, 617 (¶30) (Miss. 2010); *Hubbard v. Wansley*, 954 So. 2d 951, 957 (¶12) (Miss. 2007); *McCaffrey v. Puckett*, 784 So. 2d 197, 206 (¶33) (Miss. 2001); *Sheffield v. Godwin*, 740 So. 2d 854, 856 (¶6) (Miss. 1999); *Coleman v. Rice*, 706 So. 2d 696, 698 (¶10) (Miss. 1997); *Erby v. N. Miss. Med. Ctr.*, 654 So. 2d 495, 500 (Miss. 1995); *Drummond v. Buckley*, 627 So. 2d 264, 268 (Miss. 1993); *Barner v. Gorman*, 605 So. 2d 805, 809 (Miss. 1992); *Kelley v. Frederic*, 573 So. 2d 1385, 1387 (Miss. 1990); *Palmer v. Biloxi Reg'l Med. Ctr., Inc.*, 564 So. 2d 1346, 1355 (Miss. 1990).

¶19. Specifically, expert testimony is needed to establish "that the defendant breached the applicable standard of care, and that the breach proximately caused [the] plaintiff's injuries[.]" *Cleveland*, 119 So. 3d at 1023 (¶11). So when Myra showed up to the summary-judgment hearing without medical-expert testimony to support the Joneses' claim, summary judgment was the only option. *See* M.R.C.P. 56(c) ("The judgment sought shall be rendered

---

(4)     that the nonconformities to the standard of care caused Shirley's death, and
(5)     the extent of Shirley's damages.

*See Cheeks v. Bio-Med. Applications, Inc.*, 908 So. 2d 117, 120 (¶8) (Miss. 2005) (citing *McCaffrey v. Puckett*, 784 So. 2d 197, 206 (¶33) (Miss. 2001)).

8

forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.").

### A.    *Myra Was Not Qualified to Testify*

¶20.    The Joneses argue their claim falls under the "layman's exception," making Myra's nonexpert testimony sufficient to establish triable issues of medical malpractice. But they support their argument by touting Myra's medical *expertise*. According to their brief, Myra, as a "certified" doctor of naturopathic medicine, "possess[ed] more than an ordinary knowledge of medical care."[7] And for this reason, her testimony was enough.

¶21.    But the layman's exception is rooted in the idea that a layman could grasp malpractice based on his or her own "common sense and practical experience"—not because someone with "more than an ordinary knowledge of medical care" testified that malpractice had occurred. *Coleman*, 706 So. 2d at 698 (¶10) (quoting *Erby*, 654 So. 2d at 500). As soon as Myra injected her training and education in alternative medicine into her proposed testimony, Myra was no longer just a fact witness. Instead, she was attempting to testify as an expert. *See* M.R.E. 702. In fact, at the summary-judgment hearing, Myra told the trial judge she *was* a "medical expert," though she admitted she was unlicensed. Lack of a license aside, Myra's purported expertise in alternative medicine did not qualify her to testify against the *medical*

---

[7] Myra has never said what organization has "certified" her as a naturopathic doctor. But it could not be an agency of the State of Mississippi, which does not license doctors of naturopathic medicine.

doctors named in the lawsuit. *See McDonald v. Mem'l Hosp. at Gulfport*, 8 So. 3d 175, 181 (¶15) (Miss. 2009) (holding that an expert "must show satisfactory familiarity with the specialty of the defendant doctor in order to testify as to the standard of care owed to the patient"); *cf. also Troupe v. McAuley*, 955 So. 2d 848, 857 (¶24) (Miss. 2007) (holding that a witness tendered as an expert in neurosurgery was not qualified to testify against a neuro-otolaryngologist); *Figueroa v. Orleans*, 42 So. 3d 49, 52-53 (¶¶10-13) (Miss. Ct. App. 2010) (holding that a witness offered—and accepted—as an expert in gastroenterology was not qualified to testify about the standard of care of a surgeon). So the trial judge was right to reject Myra as unqualified to testify as an expert in this case.

### B.     *Layman's Exception Does Not Apply*

¶22.     What is more, even if Myra was to offer purely lay testimony, none of the Joneses' allegations of medical malpractice were susceptible to the layman's exception. The layman's exception is for a medical "error so obvious that a layman could easily determine fault" —such as leaving an object in a patient during surgery or giving a labor-inducing drug to a male patient. *Sheffield*, 740 So. 2d at 856 (¶6) (citing *Coleman*, 706 So. 2d at 698 (¶11) (foreign object left in body); *Dailey v. Methodist Med. Ctr.*, 790 So. 2d 903, 908 (¶4), 912 (¶¶6-7) (Miss. Ct. App. 2001) (drug injected into wrong patient)).

¶23.     The layman's exception is not for alleged errors in professional judgment. *Smith ex rel. Smith v. Gilmore Mem'l Hosp., Inc.*, 952 So. 2d 177, 181 (¶11) (Miss. 2007) (holding that "an application of the layman's exception . . . to situations involving judgment calls

10

made by professionals would be overly broad"). And here, all of the Joneses' allegations of malpractice involve judgment calls by Shirley's treating physicians—that the doctors should not have prescribed the combination of medications they did to treat Shirley's heart condition, that the doctors should have heeded earlier the recommendation to insert a pacemaker, and that the doctors should have better monitored Shirley's condition when she left the hospital. None of these allegations involved errors so obvious that a layperson would be able to determine fault without the help of a medical expert. So we agree with the trial judge that the layman's exception did not apply.

¶24. And without the required expert testimony or its narrow exception, the Joneses' claim could not survive summary judgment.

## II. Denial of Post-Judgment Motion

¶25. Nor could their claim be revived through their post-judgment motion.

¶26. This motion essentially was a request for a "do-over." The Joneses argue they should be given a second chance because Myra, as a legal layperson, had misinterpreted the layman's exception and in good faith made the mistake of thinking she did not need an expert. And as soon as her claim was dismissed, she hired an attorney, who helped her understand that she did in fact need an expert.

¶27. But a pro se litigant is to be "held to the same substantive requirements as a represented person pursuing [a] cause of action." *Ivy v. Merchant*, 666 So. 2d 445, 449-50 (Miss. 1995). And a substantive requirement to pursuing a medical-malpractice claim is

11

having medical-expert testimony to support the allegations in the complaint. The Joneses did not meet this requirement and, thus, suffered dismissal on summary judgment.

¶28.   While they cited multiple civil-procedure rules in their post-judgment motion, we have no rule that allows for what the Joneses are asking—to make a second, better attempt at trying a claim *after* that claim has been properly dismissed on summary judgment. *Cf. Fowler*, 85 So. 3d at 292 (¶¶19-20) (affirming trial court's decision that a Rule 59 motion to alter the judgment could not be used to take a "second bite at the apple" by presenting evidence that could have been presented at the summary-judgment hearing); *Woods v. Victory Marketing, LLC,* 111 So. 3d 1234, 1237-38 (¶¶11-13) (Miss. Ct. App. 2013) (rejecting plaintiff's attempt to relitigate his claim through a Rule 60(b) motion by attaching an affidavit that could have been obtained prior to summary judgment being entered).

¶29.   The judge was well within his discretion to deny the Joneses' motion. *See McNeese v. McNeese*, 129 So. 3d 125, 128 (¶4) (Miss. 2013) (reviewing post-judgment motion seeking relief from or alteration of a judgment for abuse of discretion). Therefore, we find no abuse of discretion and affirm.

¶30.   **THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS AFFIRMED.   ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE AND ROBERTS, JJ., CONCUR.   JAMES, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION.   CARLTON AND FAIR, JJ., NOT PARTICIPATING.**