# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CA-02084-COA

**ANITA WHITE, INDIVIDUALLY, AS THE GUARDIAN OF RASHAUN D. GARDNER, AND AS THE ADMINISTRATRIX OF THE ESTATE OF ZELDA GARDNER, AND TAUREAN S. GARDNER, INDIVIDUALLY**                APPELLANTS

v.

**OMAR L. NELSON AND OMAR L. NELSON, PLLC**                APPELLEES

| | |
|---|---|
| DATE OF JUDGMENT: | 09/17/2013 |
| TRIAL JUDGE: | HON. JOHN HUEY EMFINGER |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | GREGORY MOREAU JOHNSTON |
| ATTORNEYS FOR APPELLEES: | JAMES WILLIAM MANUEL |
| | MARY CLAY WADLINGTON MORGAN |
| | KATHLEEN SHIELDS O'BEIRNE |
| NATURE OF THE CASE: | CIVIL - LEGAL MALPRACTICE |
| TRIAL COURT DISPOSITION: | GRANTED PARTIAL SUMMARY JUDGMENT IN FAVOR OF APPELLEES, AND FINAL JUDGMENT ENTERED IN FAVOR OF APPELLEES |
| DISPOSITION: | AFFIRMED - 01/05/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., BARNES AND ISHEE, JJ.**

**BARNES, J., FOR THE COURT:**

¶1.     On April 14, 2008, Anita White, on behalf of the wrongful-death beneficiaries for

Zelda Gardner, filed a complaint against Omar Nelson and Nelson PLLC (collectively

"Nelson").[1]  The complaint alleged legal malpractice based on negligence and breach of fiduciary duty, fraudulent misrepresentation, gross negligence and reckless disregard, intentional conduct, and tortious interference with a business relationship.  The trial court granted partial summary judgment as to White's claims of tortious interference with a business relationship and legal malpractice based on negligence, and the action proceeded to trial on the remaining claims. A jury verdict was rendered for Nelson.  White filed a motion for a judgment notwithstanding the verdict (JNOV) or, alternatively, a new trial, which the trial court denied.  On appeal, we find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     Gardner, White's sister, died in May 2003 of thrombotic thrombocytopenic purpura (TTP), a rare but known side affect of the drug Plavix.  The autopsy report stated that Gardner's death was "[c]onsistent with [a]ccident secondary to Plavix administration producing [TTP]."  In May 2004, White consulted the law offices of Sweet & Freese to seek legal representation for any potential claims the wrongful-death beneficiaries had arising out of Gardner's death.  Omar Nelson, an associate at Sweet & Freese at the time, discussed the case with White.

¶3.     Nelson consulted with an expert, Dr. Charles Bennett, who informed him that he could

---

[1] Also included as defendants were the law office of Winston Thompson III, Nichon Shannon, Winston J. Thompson, Thompson & Associates PLLC, and T. Murry Whalen. The other defendants are not a party to this appeal.  Whalen, an attorney with Thompson & Associates, was later dismissed from the suit.  A default judgment was subsequently entered against the law office of Winston Thompson III, Winston J. Thompson, and Thompson & Associates PLLC.

We will refer to the Appellants collectively as "White."

2

not give any opinion against the treating physicians, because he felt they had acted in accordance with the standard of care. However, Dr. Bennett did state he would testify against the Plavix manufacturers. According to Nelson, because the law firm could not assert a claim against any Mississippi treating physician, Rich Freese, a managing partner, instructed Nelson to reject the case, as a federal case would be cost-prohibitive, and there was a risk of losing the case based on the content of the warning label. There is no evidence that the other partner, Dennis Sweet, was made aware of White's case at that time.

¶4.    Nelson informed White that Sweet & Freese could not take her case, and he recommended other attorneys, including Winston Thompson. White hired Thompson & Associates as counsel. On April 27, 2005, T. Murry Whalen, an attorney with the Thompson law firm, filed suit in the United States District Court for the Southern District of Mississippi on White's behalf against the makers of Plavix. The suit alleged that "Defendant Manufacturers Bristol-Myers and Sanofi failed to warn either Mrs. Gardner or the medical community of its propensity to induce TTP, leading to death." Additionally, on May 12, 2005, Thompson filed a medical-malpractice (med-mal) claim in the First Judicial District of Hinds County on White's behalf against Central Mississippi Medical Center and Gardner's treating physician.

¶5.    In July 2005, Nelson left Sweet & Freese to be a sole practitioner, and Thompson asked Nelson to assist Thompson with White's case. In January 2006, Nelson and Thompson participated in a meeting with counsel for Bristol-Myers regarding possible settlement of the federal case. On February 22, 2006, Nelson and Thompson traveled to Atlanta, Georgia, to

3

participate in mediation with representatives of Bristol-Myers. After a full day of settlement negotiations, White accepted a settlement offer of $280,000.[2] As she was representing the minor children of Gardner, White was required to submit the settlement to the Hinds County Chancery Court for approval. White agreed in her testimony that "considering the uncertainties of litigation," it was "fair and reasonable to dismiss th[e] suit," and she also affirmed that her attorneys had done "a good job[.]" Although White did express before the chancellor that she thought the value of the case would be higher, White executed a sworn petition to settle the case for $280,000 on March 29, 2006, stating the proposed settlement was "a fair and reasonable settlement and that acceptance of this settlement is in the best interest of the minors." The chancellor approved the settlement, and Bristol-Myers executed a check for $280,000. The proceeds were placed in a trust for White's nephews. Attorney's fees were approved in the amount of $112,000 for Thompson & Associates. Although Nelson requested a portion of the fee from Thompson, he never received any compensation for representing White.

¶6. In 2007, while cleaning out files in his office, Sweet found some documentation regarding White's case, and he contacted her. After meeting with her, he referred her to an attorney, Gregory Johnston. White filed a complaint on April 14, 2008, against Nelson and the other defendants for fraud and legal malpractice, alleging the defendants had knowingly diverted the case away from Sweet & Freese and settled the case for an unreasonably low amount ($280,000). Nelson filed a motion to dismiss the complaint or, in the alternative, for

---

[2] The state med-mal claim was dismissed due to procedural notice issues, with Nelson signing the agreed orders of dismissal dated November 21, 2005, and April 17, 2006.

4

summary judgment on August 14, 2009. The trial court granted partial summary judgment on November 30, 2009, dismissing with prejudice White's claim for tortious interference with a business relationship.

¶7. White moved to amend her complaint in September 2010, seeking to reference the state med-mal case in her claims against Nelson. White averred that she had only recently been made aware of the state med-mal claim filed on her behalf and moved for a partial summary judgment, contending that the "mishandling and dismissal of the medical malpractice claim without consulting [her]" was legal malpractice and that she suffered damages as a result. On February 18, 2011, the trial court granted White's motion to amend the complaint, but denied the motion for partial summary judgment.

¶8. On April 7, 2011, White filed an amended complaint, asserting fraudulent misrepresentation, legal malpractice based on a negligent breach of the duty of care, and "gross negligence, reckless disregard, [and] intentional conduct" and requesting at least $10,000,000 in compensatory damages and an unspecified amount of punitive damages. She claimed that Nelson (and the others) had negligently handled the federal products-liability case, as well as the state med-mal claim. Nelson moved for summary judgment on February 13, 2012, arguing in part that because White had failed to provide required expert testimony that Gardner's treating physician breached a standard of care, she could not prove she would have prevailed in the underlying med-mal claim.

¶9. On April 13, 2012, the trial court granted partial summary judgment on this issue, stating:

5

[F]or the [P]laintiffs to recover for negligence-based legal malpractice or for legal malpractice based upon an allegation of breach of fiduciary duty, the Plaintiff must show that such action was the proximate cause of Plaintiffs' injury. In this case, the Plaintiffs have not alleged any special damages that they may have suffered. Instead, they allege that the damage they suffered was the failure to successfully prosecute their claims against these state court [med-mal] defendants. That is the essence of the negligence-based legal[-]malpractice claim. Accordingly, this [c]ourt must apply the "trial-within-a-trial" test to determine whether the Plaintiffs can survive summary judgment as to the issue of proximate cause. No affidavit from an expert has been presented to the [c]ourt on the issue of medical malpractice for the breach of a standard of care as required to establish this claim. . . .Therefore . . .the [c]ourt finds that the Plaintiffs have failed to meet their burden on this essential element of this particular claim[.]

The trial court later granted Nelson's motion in limine to exclude discussion of the state med-mal suit at trial by White's legal expert witness, Freese. On April 16, 2013, White filed a motion to voluntarily dismiss with prejudice the negligence-based legal-malpractice claim. The trial court granted the motion, dismissing all "negligence-based legal[-]malpractice" claims against Nelson.

¶10. A trial was held September 10-13, 2013, on the remaining claims of fraudulent misrepresentation and legal malpractice based on a breach of fiduciary duty. A jury verdict was rendered in favor of Nelson, and the trial court entered a final judgment in favor of Nelson on September 18, 2013.

¶11. White filed a motion for a JNOV or, in the alternative, a new trial. The trial court denied White's motion, and she now appeals. Finding no error in the trial court's holding, we affirm the judgment.

## DISCUSSION

I.      **Whether the trial court erred in denying White's motion for a**

6

JNOV.

¶12.   White claims the trial court erred in denying her motion for a JNOV, as she presented "indisputable evidence of the fraudulent acts and breach of fiduciary duty of the Nelson Defendants[.]" A motion for a JNOV challenges the legal sufficiency of the evidence. *Mine Safety Appliance Co. v. Holmes*, 171 So. 3d 442, 446 (¶8) (Miss. 2015) (citing *Adcock v. Miss. Transp. Comm'n*, 981 So. 2d 942, 948 (¶25) (Miss. 2008)). The trial court's denial of a JNOV is reviewed de novo and will be affirmed if, "viewing the evidence in a light most favorable to the verdict, 'there is substantial evidence to support the verdict.'" *Id*.

¶13.   The following undisputed facts were presented at trial:

White came to Sweet & Freese based on a recommendation. White met with Nelson at Sweet & Freese; he reviewed Gardner's medical records and contacted Dr. Charles Bennett concerning issues with the drug Plavix.

Nelson contacted White and told her that Sweet & Freese could not handle her case, and he referred her to Thompson, an attorney with whom Nelson had no professional connection.

White contacted the law office of Thompson & Associates months later, and she signed a retainer agreement with the firm. On April 27, 2005, a federal suit was filed by Thompson & Associates (T. Murry Whalen) against Bristol-Myers and Sanofi on behalf of Gardner's wrongful-death beneficiaries.

Nelson left Sweet & Freese in July 2005 and later assisted Thompson with White's case.

Nelson & Thompson met with counsel for Bristol-Myers in February 2006 to negotiate a settlement. A settlement of $280,000 was reached, and White agreed to the amount, consulting with her aunt prior to accepting.

White testified before the chancery court that while she felt uncomfortable with the amount, she did not want to hire new counsel and thought the settlement was fair and reasonable. She also signed a sworn petition to that effect.

There was disputed testimony that White was made to believe that she was co-represented by Sweet & Freese, as she claimed she thought Nelson still represented Sweet. Nelson said that he saw White in Hinds County Chancery Court in August 2005, and informed her that he was no longer working at Sweet & Freese. White admitted she never met Sweet until 2007.

¶14. White contends, as she did before the jury, that had another attorney, such as Sweet, represented her, she would have received a higher settlement. "In order to recover for legal malpractice, a plaintiff must prove by preponderance of the evidence the existence of a lawyer-client relationship, negligence on the part of the lawyer in handling his client's affairs entrusted to him, and some injury proximately caused by the lawyer's negligence." *Baker Donelson Bearman & Caldwell P.C. v. Muirhead*, 920 So. 2d 440, 449 (¶34) (Miss. 2006) (citations omitted). Specifically, when the malpractice claim "is based on an allegation of breach of fiduciary duty, the plaintiff must establish (1) the existence of an attorney-client relationship; (2) the acts constituting a violation of the attorney's fiduciary duty; (3) that the breach proximately caused the injury; and (4) the fact and extent of the injury." *Crist v. Loyacono*, 65 So. 3d 837, 843 (¶15) (Miss. 2011). The proof of proximate cause in cases involving a claim of legal malpractice based on a breach of fiduciary duty is "to be tailored to the injury the client claims and the remedy he elects." *Id.* at 842 (¶14) (quoting *Singleton v. Stegall*, 580 So. 2d 1242, 1245 (Miss. 1991)).

¶15. We find there was substantial evidence to support the jury's verdict. White's only proof at trial of proximate cause of injury or damages was provided through a deposition by

8

Freese, who merely opined "that had this case been venued in Hinds County with competent lawyers, the settlement value would have dwarfed what this case settled for" and a three to four million dollar settlement "would have been a reasonable amount to expect to recover."[3] But Freese admitted he had never worked on a Plavix case; nor was he knowledgeable of any verdicts concerning Plavix. Furthermore, Freese acknowledged that in settlement negotiations, he informs a client that "we could either win a significantly larger amount than they are offering, or we could win zero and the case could end up being worth nothing. So that's why you have settlements, *because there is uncertainty in what the result would be.*" (Emphasis added). He offered no testimony of what a reasonable settlement would have been, taking into account the costs and uncertainty of the case. Moreover, Nelson's legal expert, Walter Morrison, testified that the warning label of Plavix specifically warned that the drug could cause TTP, which led him to believe that summary judgment in favor of Bristol-Myers was "highly likely" had White not settled the case. Accordingly, the jury verdict, finding no liability for Nelson's recommending the settlement, was based on substantial evidence.

¶16. We additionally find the jury's verdict was supported as to the claim that Nelson fraudulently misrepresented that Sweet was working on her case and that she suffered damages as a result of that misrepresentation. To establish fraud, a plaintiff is required to prove the following:

---

[3] Freese was originally intended to be in attendance at trial as an expert witness in legal matters, but conflicts later arose, so the trial court allowed Freese's deposition to be introduced and read into evidence. Nelson objected to the introduction of this evidence and to Freese's qualifications as a legal expert, which the court overruled.

(1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) his reliance on its truth, (8) his right to rely thereon, and (9) his consequent and proximate injury.

*Morgan v. Green-Save Inc.*, 2 So. 3d 648, 652 (¶10) (Miss. Ct. App. 2008) (quoting *Mabus v. St. James Episcopal Church,* 884 So. 2d 747, 762 (¶32) (Miss. 2004)). White admitted that Nelson called her and said Sweet & Freese was too busy and could not handle her case. As Nelson noted at trial, White paradoxically claims that had Sweet represented her, she would have received a higher settlement, yet also claims that Nelson fraudulently misrepresented to her that Sweet was associated on her case the entire time. Regardless, all evidence showed that during the federal litigation, the only attorneys White discussed the case with were attorneys with Thompson & Associates and Nelson. White never met or spoke to Sweet until 2007, when he contacted her regarding the files left in his office.

¶17. Therefore, viewing the evidence in the light most favorable to the jury's verdict, we find it was supported by substantial evidence, and the trial court did not err in denying the motion for a JNOV.[4]

### II. Whether the trial court should set aside the judgment and order a new trial.

¶18. White also asserts an alternative claim that the trial court should set aside the jury verdict and order a new trial. "Rule 59 of the Mississippi Rules of Civil Procedure authorizes the trial court to set aside a jury verdict and grant a new trial whenever justice

---

[4] We decline to address Nelson's defense of judicial estoppel, as it is moot based on our findings.

requires." *Blossman Gas Inc. v. Shelter Mut. Gen. Ins. Co.*, 920 So. 2d 422, 424 (¶10) (Miss. 2006) (citing *White v. Yellow Freight Sys. Inc.,* 905 So. 2d 506, 510 (¶7) (Miss. 2004)). However, a verdict will only be overturned "when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Bush v. State,* 895 So. 2d 836, 844 (¶18) (Miss. 2005). White asserts that a new trial was warranted for the reasons discussed below.

> **A.    Whether the granting of partial summary judgment regarding the med-mal case was improper and, alternatively, assuming summary judgment was properly granted, whether it was improper to exclude evidence of the med-mal case at trial.**

¶19.    White contends that genuine issues of material fact existed as to whether Nelson's actions in the state med-mal case constituted "legal malpractice, fraudulent misrepresentation, reckless disregard and gross negligence." She alternatively claims that even if summary judgment on her negligence-based legal-malpractice claims was warranted, the exclusion of evidence regarding the med-mal case at trial was improper and "inconsistent with the trial court's other rulings in the case." White argues that the case at trial was "significantly diminished" because she was unable to reference the state med-mal case.

¶20.    We review a trial court's decision to grant or deny summary judgment de novo. *Crist*, 65 So. 3d at 842 (¶12). "Summary judgment is appropriate where 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id*. (quoting M.R.C.P. 56(c)). The evidence is viewed "in the light most favorable" to the nonmoving party. *Id*.

11

¶21.    The supreme court stated in *Crist*: "It is true – and well established – that a plaintiff in a negligence-based malpractice action must establish proximate cause by the so-called 'trial-within-a-trial' test.  That is to say, the client 'must show that, but for his attorney's negligence, he would have been successful in the prosecution or defense of the underlying action.'" *Id*. at (¶14) (quoting *Wilbourn v. Stennett, Wilkinson & Ward*, 687 So. 2d 1205, 1215 (Miss. 1996)).  Also well established is our precedent that in a medical-malpractice claim, the plaintiff cannot survive a motion for summary judgment "without medical-expert testimony." *Jones v. MEA Inc.*, 160 So. 3d 241, 246 (¶19) (Miss. Ct. App. 2015) (citations omitted).  With regard to the state med-mal claim, the only injury alleged by White was that the claim would have been successful on the merits.  Nelson noted during a pretrial motions hearing: "[T]here's no way for the plaintiffs here to establish that they would have recovered more had any other attorneys handled this case without proving the merits of the underlying case."  As White failed to designate a medical expert witness for the med-mal claim, we cannot find error in the trial court's grant of partial summary judgment on this issue.

¶22.    White further claims that the trial court should have allowed evidence of the state med-mal claim to be presented at trial. She contends allowing this evidence would have presented a stronger case that Nelson and Thompson were conspiring to defraud White. "When reviewing the trial court's decision to admit or exclude evidence, we are bound by an abuse-of-discretion standard of review." *Vaughn v. Miss. Baptist Med. Ctr.*, 20 So. 3d 645, 654 (¶28) (Miss. 2009) (citing *Webb v. Braswell*, 930 So. 2d 387, 396-97 (¶15) (Miss. 2005)).  Mississippi Rule of Civil Procedure 403 allows a trial court to exclude evidence

where the "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury[.]"

¶23.    In response to Nelson's motion in limine to exclude Freese's expert testimony, the trial court ordered that any reference to the med-mal claim should be excluded from his testimony. During the trial, the court also restricted portions of letter prepared by Whalen regarding an estimate of damages that pertained to the med-mal suit. Yet we observe that the trial court did not summarily exclude any and all references to the state med-mal suit. Freese was permitted to reference the damage estimate, and Whalen was allowed to discuss the damage estimate itself in more general terms. White was also able to introduce evidence that Thompson and Nelson worked together after the case was turned down by Sweet & Freese. As already noted, White was unable to prove that the underlying med-mal suit was meritorious, and we find any probative value of this evidence was outweighed by the potential confusion of the issues and unfair prejudice that presenting the evidence may have caused. White suffered no prejudice as a result of the exclusion of this evidence; therefore, we find no abuse of discretion in the trial court's ruling, and the trial court did not err in denying White's motion for a new trial.

B.    **Whether White's causes of action for gross negligence and reckless disregard were viable independent claims that should have been presented to the jury at trial.**

¶24.    In her original and amended complaints, White asserted claims for gross negligence and reckless disregard against Nelson. At trial, White requested a jury instruction on gross negligence. Nelson objected, arguing that all negligence claims were voluntarily dismissed

13

by White in the September 4, 2013 petition. The trial court concluded that the claims were not independent causes of action, stating:

> As I indicated earlier when this was raised, the question of whether or not the breach of those duties was grossly negligent or intentional so as to justify punitive damages would be something I would take up after the jury's verdict[,] and I don't believe those are, in this case, under the facts of this case and ruling previously by the court, that there is a separate cause that is still viable to present to the jury[.]

White claims that the court erred in its ruling and the inability to present these claims to the jury prejudiced her case and "contributed to the jury verdict in favor of [Nelson]." Our supreme court has held:

> Regarding jury instructions, the trial court possesses considerable discretion. *Bickham v. Grant,* 861 So. 2d 299, 301 (¶8) (Miss. 2003). A party is entitled to a jury instruction if it concerns a genuine issue of material fact and there is credible evidence to support the instruction. *Mariner Health Care, Inc. v. Estate of Edwards,* 964 So. 2d 1138, 1156 (¶48) (Miss. 2007). While a party is entitled to jury instructions that present his theory of the case, this entitlement is limited; the trial court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence. *Ford v. State,* 975 So. 2d 859, 863 (¶11) (Miss. 2008).

*Young v. Guild*, 7 So. 3d 251, 259 (¶23) (Miss. 2009).

¶25. White cites *Stewart v. Gulf Guaranty Life Insurance Co.*, 846 So. 2d 192 (Miss. 2002), to support her contention that the trial court erred in excluding a jury instruction on gross negligence as an independent cause of action. Upon review, we find *Stewart* actually lends support to the trial court's ruling. In *Stewart,* the supreme court held that the judge erred in granting a JNOV *as to punitive damages* since "[s]ufficient evidence was presented to the jury whereby the jury could have reasonably concluded gross negligence due to Gulf

14

Guaranty's conduct." *Id*. at 195 (¶5). Consequently, we find no abuse of discretion in the trial court's ruling that the jury instruction on gross negligence should not have been presented as a separate cause of action, but was more appropriate in the context of determining punitive damages only after a determination of liability against Nelson. *See AmSouth Bank v. Gupta*, 838 So. 2d 205, 224 (¶71) (Miss. 2002) ("The jury may consider punitive damages only where the plaintiff has shown by clear and convincing evidence that the defendant 'acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud.'" (quoting Miss. Code Ann. § 11-1-65(1)(a) (Rev. 2002))).

¶26. We also agree with Nelson's argument that White's claim is "meritless," as these are simply higher degrees of negligence and the negligence-based claims were dismissed. Admittedly, the trial court did state in its order for partial summary judgment, which dismissed White's negligence-based legal-malpractice claim, that the cause of action for "gross negligence, reckless disregard, and intentional conduct . . . should be decided by a jury." Regardless, it is well established that "gross negligence" and "reckless disregard" are simply higher degrees of negligence. *See City of Laurel v. Williams*, 21 So. 3d 1170, 1174 (¶17) (Miss. 2009) (noting that reckless disregard is a higher standard than gross negligence); *City of Jackson v. Brister*, 838 So. 2d 274, 280 (¶23) (Miss. 2003) (holding reckless disregard is more than ordinary negligence). Thus, in order to establish a claim on these grounds, White would have to present her "case within a case," which she did not do. Thus, we find no merit to this issue raised by White.

15

¶27.  **THE JUDGMENT OF THE MADISON COUNTY CIRCUIT COURT IS AFFIRMED.  ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.**

**GRIFFIS, P.J., ISHEE, CARLTON AND FAIR, JJ., CONCUR.  IRVING, P.J., CONCURS IN PART AND IN THE RESULT.  LEE, C.J., JAMES AND WILSON, JJ., NOT PARTICIPATING.**